Argued March 22, 1934.
Plaintiff sued to recover damages which he alleged he had sustained and would thereafter sustain by reason of the negligence of the defendant, resulting in a collision between an automobile, in which plaintiff was riding as a guest, and another belonging to defendant and being driven by one of its employees upon its business. The jury rendered a verdict for plaintiff for $85,000. This the court below reduced to $60,000, and for that sum judgment was duly entered. Appellant admits in its brief "that this case was for the jury," which necessarily concedes that there was justification, in the evidence, for the jury's finding that the defendant had been negligent, and plaintiff had not; and limits our review of the record to errors alleged to have been committed in the admission or rejection of evidence, in the charge to the jury, or in the proceedings subsequent to the trial.
At the time of the accident, plaintiff was thirty-six years of age. To prove his life expectancy, the American Experience Tables of Mortality, as published in 41 C. J., *Page 212 
page 216, was offered in evidence and admitted without objection. They showed that the life expectancy of those to whom the tables could properly be applied was 31.07 years. On the other hand, the London Tables show that such life expectancy is 21.1 years. This great discrepancy conclusively establishes that what we said in relation to the admissibility of such tables, in McCaffrey v. Schwartz, 285 Pa. 561, the cases cited therein and those following in its train, was not too strongly stated. We do not intend, at this time, to go further into the question of the admissibility of such tables than we did in those cases, but it causes us to again clearly announce that in this and future cases, we will hold trial judges to a strict compliance with their duty, as therein expressed, in respect of the extent to which the tables can be utilized, and the limitations upon their use. As stated in Aylesworth v. Hays, 299 Pa. 248, 251: "What we said in our opinion [in McCaffrey v. Schwartz, supra, on this subject] we shall not depart from," and this, as we will show, compels a reversal of the judgment in the present case.
In McCaffrey v. Schwartz, we said at page 573-4: "When tables of this character are part of the evidence in a case, the court should carefully instruct concerning their use, and all the factors which tend to limit their application ought to be stressed. It is not enough for the trial judge to charge, as the judge in the present case evidently intended to do, that the tables are of some aid, but not conclusive, in determining the probable life of the plaintiff. 'All the circumstances affecting the probable duration of plaintiff's life as disclosed by the evidence . . . . . . should [be] called to the attention of the jury': Seifred v. P. R. R., 206 Pa. 399, 403; see also Kerrigan v. P. R. R., 194 Pa. 98, 105; Steinbrunner v. Pittsburgh, etc., Ry. Co., 146 Pa. 504, 515. The charge must include a survey of such matters as sex, prior state of health, nature of daily employment and its perils, if any, manner of living, personal habits, individual characteristics *Page 213 
and other facts concerning the injured party, which may affect the duration of his life: Pauza v. Lehigh Valley Coal Co.,231 Pa. 577, 579; Steinbrunner v. Pittsburgh, etc., Ry. Co., supra. For if all these variables are not called plainly and directly to the attention of the jurors, they are likely to be entirely overlooked and the tables accepted as a constant and exclusive guide; whereas they are far from occupying that evidential position." Possibly the better practice would be to require all those factors to be proved as a condition precedent to the admission of the tables in evidence. If the facts regarding them are not admitted or substantially proved during the trial the sitting judge should, on motion, strike out the tables as evidence in the case, and, in any event, should instruct the jury to disregard them in reaching its verdict.
In the instant case, the trial judge did not comply with our requirements on this subject. All he said was: "Under the practice in the courts of this State, certain mortality tables have been offered in evidence and are properly received and you may give them due weight after you have had instructions. They are the result of experience and study and observation of certain insurance companies to determine the expectancy of life and you understand, assuming that Morando's age is 36, his health good, you may consider and receive some aid from these tables which give his expectancy, the time which he might be expected to live, as some thirty years. But you must not rely to a great extent upon these tables, use them only as an aid.
As you know, there can be no rule by which we can measure the future of a life, so you will consider what Morando's condition was at the time of the accident, what was his health, the character of his employment, the nature of his employment, and all of the attending circumstances given you, and the true conditions at that time and then what aid you may receive from these tables, you use in determining what you believe to be his reasonable expectancy of life." *Page 214 
It will be noticed that this charge does little more than refer to the tables as an "aid" to the jury, which was the very thing we stated was erroneous in McCaffrey v. Schwartz, supra. Nothing was said about plaintiff's "manner of living, personal habits, individual characteristics and such other facts [heredity and environment for instance] as may affect the duration of his life," probably because of the great paucity of evidence on these subjects. If, however, the evidence was so meager as not to enable the trial judge to charge regarding them, it was too meager to justify the use of the tables, and the jury should have been so told. From what was said, the jury might well have inferred, and probably did infer, that from his "condition at the time of the accident, his health, the character of his employment, the nature of his employment, and all of the attending circumstances given you [of which there were practically none] and the true conditions [none other being stated in either the evidence or the charge] at that time and then with what aid you may receive from these tables you determine what you believe to be his reasonable expectancy of life." This is a long way from the requirements of McCaffrey v. Schwartz and Aylesworth v. Hays, supra, and emphasizes once again our statement in Steinbrunner v. Ry. Co., 146 Pa. 504,517, that these tables "may prove a dangerous element in this class of cases unless the attention of juries is pointedly called to the other questions which affect it." See also Pauza v. Lehigh Valley Coal Co., 231 Pa. 577.
But "the worst is yet to come." An even more serious matter, akin to the foregoing, appears in the charge. There was evidence produced by plaintiff that in the future the only place he could properly be cared for would be in a private institution. No reason is given for this limitation of place, and the supposed fact should not have been admitted in evidence, since plaintiff averred in his statement of claim that plaintiff "has been confined and will permanently be confined to the County *Page 215 
Home of Potter County, where he has been supported at the county's expense and has, consequently, undergone liability to the County of Potter for the amount expended by it for his support during his said confinement and will bepermanently required to undergo said expenses." The trial judge's reason for the admission of that evidence is that "A reading of the statement of claim as a whole discloses injuries of such severity, both physical and mental, that defendant was put upon notice that institutional care of some sort was required by plaintiff's condition." This is far from correct. The question did not relate solely to institutional care, but to such care in a private institution, always more expensive than a public one. Hence, the trial judge's conclusion was that "the statement of claim as a whole . . . . . . puts the defendant on notice" that private institutional care would be required, although that same statement expressly avers the contrary. This was error: Krajkowski v. Phila. Rapid Transit Co., 282 Pa. 104, 107.
Turning from this, however, and coming back to the point being considered, we find that the only thing the trial judge said in regard to it was: "Then you have future expenses along that line and there has been evidence offered as to the cost of institutional care for this plaintiff, care and treatment, maintenance and that cost has been given varying from $50 to $60 and $75 a week and on that question you would again have to determine what in your judgment was the expectancy of life of this plaintiff. . . . . . Again the burden is upon the jury to determine what that future expense would amount to. I can only say that you must use your best judgment and determine this amount subject to the rules with respect to rendering the present worth because any verdict on your part for the plaintiff would contemplate present payment by the defendant, the giving in hand, in other words." There was no evidence whatever as to plaintiff's probable "expectancy of life," after he had been injured. Hence the jury could only have understood the *Page 216 
trial judge, when, in this last quotation from his charge, he referred to plaintiff's "expectancy of life," to mean the expectancy of life shown by the American Experience Tables of Mortality, to which shortly before he had referred at some length. That is to say, the trial judge left to the jury to say whether or not plaintiff should, on this account, receive $50 to $75 per week for 31 years, amounting altogether to from $80,800 to $121,200. Assuming, but not deciding, that plaintiff could, if his statement of claim justified it and notwithstanding the meager evidence on the subject, recover the expense of private institutional care, he certainly was not entitled to recover therefor for the 2 1/2 years which had expired between the date of the accident and the time of the trial, during none of which had he had private institutional care, but, on the contrary, was claiming for and proved the public institutional care and all other expenses he had incurred during that period. The trial judge said nothing on this subject. Nor could plaintiff recover as upon his life expectancy when he was in good health, for that was not the life expectancy during which he might need "private institutional care," especially as the basis of his claim was that, by reason of the accident, his good health was forever gone. To recover at all upon this theory he would have had to prove what was his life expectancy after his injury, and, with some reasonable measure of accuracy, the amount he would probably have to pay at the time of such periodical payments, because of his then present condition, not what was generally paid by other patients in such institutions, unless their condition was substantially the same as his.
The importance of the point now under consideration is shown by the fact that the "private institutional care" item, — if $50, the lowest amount per week is taken, — would in 31 years amount, as we have already stated, to $80,800, yet, touching it, the jury were given no instructions whatever, so far as concerned the period of its possible continuance. *Page 217 
We have not overlooked the fact that on the point last considered no separate exception was taken at the trial, but the error was a basic and fundamental one, within our rule that for such errors we will always reverse, where, as here, a general exception was taken to the charge: Act of May 24, 1923, P. L. 439; Peterman v. Enggasser, 280 Pa. 528. Nor have we overlooked the fact that in Ellsworth v. Lauth, 311 Pa. 286, — for which the writer hereof is primarily responsible, — we held, in a somewhat similar case, that such an error was not basic and fundamental. Under the Act of 1923 (not called to our attention in that case, nor recalled by us when considering it), especially when considered in the light of McCaffrey v. Schwartz, and the cases in its train, where, as already quoted, we held that the charge "must include a survey of such matters" as limit the use of such tables, we can but overrule Ellsworth v. Lauth on this point, and hold that an error in this respect is basic and fundamental. We are clear that, as stated in Herb v. Hallowell, 304 Pa. 128, the error here "palpably has led to an unjust verdict" and hence the "failure to ask for [more] specific instructions . . . . . . will not prevent a reversal of the court below."
It must not be supposed that, because this opinion is limited to the foregoing matters, we think the other errors assigned have no validity. When, if ever, it becomes necessary to consider the points embodied in them we will do so. At the present time there is no such necessity.
The judgment of the court below is reversed and a venire facias de novo is awarded. *Page 218