Sweeny, Appellant, *v.* Bonafiglia.

Argued January 4, 1961. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

218

*David H. Kubert,* with him *Martin R. Fountain,* for appellant.

*Ronald H. Sherr,* with him *Howard R. Detweiler,* for appellee.

OPINION BY MR. JUSTICE EAGEN, March 23, 1961:

The plaintiff-appellant sued the defendant-appellee for personal injuries and property damage resulting from an automobile collision. The jury trial resulted in a verdict for the defendant. The lower court denied a new trial. From the judgment entered upon the verdict, this appeal was filed.

The collision occurred about ten o'clock in the morning on April 7, 1956, at the right-angled intersection of Wheatsheaf Lane and Aramingo Avenue in the City of Philadelphia. The defendant's automobile was proceeding south on Aramingo Avenue which is seventy-two feet wide from curb to curb. There is a six foot medial strip in the center allowing for a thirty-three foot wide pavement on each side, or three lanes for traffic traveling in each direction. The plaintiff's automobile was traveling west on Wheatsheaf Lane which is forty feet in width. There are no traffic light signals at the intersection, but Wheatsheaf Lane is controlled by stop signs, Aramingo Avenue being a

through highway. It was raining but visibility was good.

The versions of the occurrence differed substantially in material facts. Plaintiff testified that he stopped at the stop sign, looked in both directions and saw no traffic except two cars coming south on Aramingo Avenue, one in the easternmost lane immediately next to the medial strip at a distance of about three-fourths of a block away; the other in the westernmost lane for southbound traffic at a distance of about one and one-half blocks away. The plaintiff proceeded across the intersection at about ten miles per hour and came to a complete stop at the medial strip. There was a car going south on Aramingo Avenue about seventy-five feet away. He permitted it to pass. He saw another car two hundred and fifty to three hundred feet traveling south at a normal rate of speed in the westernmost lane. Thinking it was safe to proceed, he started across the remaining thirty-three feet of the intersection at about ten miles per hour. He did not look to his right again. His car was struck at the rear when about four feet of the front thereof had passed safely beyond the westerly curb line with eleven or twelve feet still projected out into the intersection.

The defendant testified that his automobile was traveling approximately thirty-five miles per hour in the easternmost southbound traffic lane. He saw plaintiff's automobile stop at the stop sign and stop again at the medial strip. The defendant's car was then two hundred and fifty to three hundred feet from the intersection traveling about thirty-five miles per hour. The front bumper of the plaintiff's car was extending out into the southerly traffic lane of Aramingo Avenue. The defendant turned from the traffic lane next to the medial strip into the center traffic lane to avoid hitting the front of the plaintiff's car.

When the defendant's automobile was about one hundred feet from the intersection, the plaintiff's car suddenly started to move forward directly into the defendant's pathway. The defendant turned to the left and tried to avoid the collision, but in vain.

The assignments of error refer solely to alleged erroneous instructions of the trial judge and inadequacies in the charge. Plaintiff contends that the charge of the court was erroneous in two respects: (1) In referring to the plaintiff's duty to stop at the stop sign; (2) The instructions in regard to the duty of motorists approaching intersections.

We cannot see how calling to the jury's attention the plaintiff's duty to stop at the traffic sign worked to his detriment or prejudice. The obligation was absolute and the jury had the right to have the law in this respect defined. What traffic plaintiff saw approaching the intersection at this point was an important factor. True, his stopping was not a causative or factual issue in the case, particularly so in view of the testimony on both sides that he did stop, but it was correct for the court to explain completely the obligations involved in the particular situation. Further, what is more important, no possible harm resulted.

As to the duty of motorists approaching intersections, the court in substance, instructed the jury that a motorist approaching an intersection, even in the absence of stop signs or traffic lights, must have his car under such control that he can stop it instantly or nearly instantly. This, of course, is not the correct standard of care required. To require a motorist to exercise such control that he can stop instantly or nearly instantly is not reasonable or realistic in these days of highly improved thoroughfares and other conditions. However, this instruction did not prejudice the plaintiff, the party now complaining. It is the

defendant who was hurt by this inaccurate portion of the charge. The negligence of the plaintiff was not based upon the lack of proper control of his vehicle but rather upon the fact that he pulled out into the intersection and into the pathway of the defendant's automobile at a time when his vehicle was too close to the intersection for it to be done with reasonable prudence. Under such circumstances the error is not sufficient reason to warrant the plaintiff's gaining a new trial.

Finally, it is argued that the charge was inadequate in that it did not sufficiently clarify the issues the jury were called upon to determine, and further it did not define proximate causation. While a trial judge should always explain the significance of proximate cause and also clarify the issues for decision in understandable language, we cannot agree that the charge when read as a whole was prejudicial in either respect. In addition, at the end of the charge, the court invited the suggestions of counsel on both sides. Counsel for the plaintiff made some requests with which the court complied, none of which dealt with the inadequacies now complained of. Only a general exception was entered of record. As we have reiterated many times, an appellate court will not grant a new trial on the ground of inadequacy in the charge unless there is an omission of something basic or fundamental which is prejudicial, especially where the complaining party was invited to suggest additions to the charge and remained silent: *Giorgianni v. DiSanzo,* 392 Pa. 350, 140 A. 2d 802 (1958); *Keefer v. Byers,* 398 Pa. 447, 159 A. 2d 477 (1960). As pointedly said in this latter case, at 452, " 'Where no particular instructions are prayed for the court is responsible only for the general effect of the charge considered as a whole, and not for mere omissions to say what might properly have been said.' [case cited]." An examina-

tion of the charge in its entirety discloses no prejudicial error. It was definitely not misleading. That under the evidence presented, the jury had every right to find for the defendant, no one can gainsay.

Judgment affirmed.

Mr. Justice MUSMANNO concurs in the result.