617 A.2d 1296

Elmer OTTAVIO and Anna Ottavio, H/W, Appellees

v.

FIBREBOARD CORP., PACOR, Inc., Johns-Manville Corp., Eagle Picher Industries, Keene Corp., Raybestos–Manhattan, Celotex Corp., Southern Textile Corp., J.P. Stevens Co., Garlock, Inc., Owens–Illinois Glass, GAF Corp.

**Appeal of FIBREBOARD CORPORATION.**

Superior Court of Pennsylvania.

Argued May 1, 1992.

Filed Dec. 16, 1992.

R.T. Wentley, Pittsburgh, for appellant.

Steven J. Cooperstein, Philadelphia, for Ottavio, appellee.

Before ROWLEY, President Judge, and WIEAND, McEWEN, DEL SOLE, MONTEMURO, BECK, TAMILIA, KELLY and JOHNSON, JJ.

OPINION PER CURIAM:

Elmer Ottavio filed an action against numerous manufacturers of asbestos products to recover for injuries allegedly sustained as a result of workplace exposure to asbestos during his employment at the Philadelphia Navy Yard, where he had worked for a period of forty (40) years, first as a sheetmetal worker and later as a designer. In a "reverse bifurcated" proceeding, Ottavio sought damages for pleural thickening and a fear of developing future diseases, including cancer, allegedly caused by exposure to asbestos. A jury awarded damages to Ottavio in the amount of one hundred fifty thousand ($150,000) dollars. The claims against most defendants named in the action were thereafter settled. Fibreboard Corporation, however, did not settle Ottavio's claim and proceeded to trial on the issue of liability.[1] The jury found that Fibreboard and twelve (12) other non-bankrupt manufacturers of asbestos had contributed to Ottavio's injuries. Post-trial motions were denied, and judgment was entered against Fibreboard in the amount of $18,795. On appeal, Fibreboard contends that the evidence was insufficient to support the jury's verdict and that

1. The Ottavio claim was consolidated for trial with a separate claim by John Altiere, who, in addition to pleural thickening, had developed prior to trial a pulmonary asbestosis and consequent exertional dyspnea (shortness of breath). His claim, for which the jury awarded damages of three hundred fifty thousand ($350,000) dollars, is the subject of a separate review by this Court.

the trial court committed numerous errors. We will review these contentions seriatim.

## I. Sufficiency of the Evidence

■ "In reviewing the sufficiency of the evidence to support the verdict, we view the evidence in the light most favorable to the verdict winner, granting that party the benefit of all reasonable inferences." *Cohen v. Albert Einstein Medical Center,* 405 Pa.Super. 392, 398, 592 A.2d 720, 723 (1991), citing *Cooper v. Burns,* 376 Pa.Super. 276, 280–281, 545 A.2d 935, 937 (1988), *allocatur denied,* 522 Pa. 619, 563 A.2d 888 (1989). See also: *Atkins v. Urban Redevelopment Authority of Pittsburgh,* 489 Pa. 344, 351, 414 A.2d 100, 103 (1980); *Lopa v. McGee,* 373 Pa.Super. 85, 540 A.2d 311 (1988); *Elder v. Orluck,* 334 Pa.Super. 329, 483 A.2d 474 (1984), *affirmed,* 511 Pa. 402, 515 A.2d 517 (1986); *Reichman v. Wallach,* 306 Pa.Super. 177, 184–185, 452 A.2d 501, 505 (1982). In order for a defendant to be held liable in a products liability action, whether under a theory of negligence or strict liability, plaintiff must establish that the injuries were caused by a product of the particular manufacturer or supplier. *Eckenrod v. GAF Corp.,* 375 Pa.Super. 187, 190–191, 544 A.2d 50, 52 (1988), *allocatur denied,* 520 Pa. 605, 553 A.2d 968 (1988), citing *Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 337 A.2d 893 (1975). See also: *Lilley v. Johns-Manville Corp.,* 408 Pa.Super. 83, 596 A.2d 203 (1991); *Bushless v. GAF Corp.,* 401 Pa.Super. 351, 585 A.2d 496 (1990); *Bilk v. Abbotts Dairies, Inc.,* 147 Pa.Super. 39, 23 A.2d 342 (1941). In an asbestos action this requires that a plaintiff establish more than mere presence of asbestos in the workplace. Plaintiff must prove that he worked in the vicinity of the products' use and that, hence, he inhaled asbestos fibers shed by the product of a specific manufacturer. *Lilley v. Johns-Manville Corp., supra; Samarin v. GAF Corp.,* 391 Pa.Super. 340, 571 A.2d 398 (1989); *Eckenrod v. GAF Corp., supra,* citing *Pongrac v. Consolidated Rail Corp.,* 632 F.Supp. 126 (E.D.Pa.1985). See also: *Richards v. Raymark Industries, Inc.,* 660 F.Supp. 599 (E.D.Pa.1987). See generally: Annotation, *Products Liability: Necessity and Sufficiency of Identification of Defendant*

*as Manufacturer or Seller of Product Alleged to Have Caused Injury,* 51 A.L.R.3d 1344 (1973).

■ Ottavio was not able to identify the manufacturer of asbestos products to which he had been exposed. He testified, however, that he had been exposed to asbestos dust during his work on various ships. He said that he had worked as a machinist from 1947 to 1983 and that during this period he had been present in machinery spaces, firerooms, and engine rooms of ships where his proximity to the use of asbestos had caused him to be exposed to asbestos dust and fibers. In order to prove exposure to asbestos products manufactured by Fibreboard, he introduced the videotaped testimony of George Watts, a former pipecoverer and supervisor at the Philadelphia Navy Yard from 1940 to 1974. Watts had worked with or near Ottavio in machinery spaces of various ships, and he was able to identify the ships on which he had observed Ottavio working and also ships on which Fibreboard asbestos products had been used. Watts said that Ottavio could not have avoided inhaling asbestos laden dust from Fibreboard products.

This testimony, together with testimony given by John Altiere, a co-plaintiff, was sufficient to support the jury's finding that Fibreboard's asbestos products had been a substantial factor in causing Ottavio's injuries. See: *Lilley v. Johns-Manville Corp., supra,* citing *Samarin v. GAF Corp., supra* at 348, 571 A.2d at 402–403 (1979), *allocatur denied,* 524 Pa. 629, 574 A.2d 71 (1990). See also: *Taylor v. Celotex Corp.,* 393 Pa.Super. 566, 581, 574 A.2d 1084, 1092 (1990), citing *Odum v. Celotex Corp.,* 764 F.2d 1486, 1488 (11th Cir.1985) and *Richards v. Raymark Industries, Inc., supra* and *Ward v. Celotex Corp.,* 479 So.2d 294, 296 (Fla.App.1985). It follows that the trial court did not err when it denied Fibreboard's motion for judgment n.o.v.

## II. The Make–Up of the Jury

■ In Pennsylvania, parties to litigation have a constitutional right, under Pa.Constitution Art. I, § 6, to trial by jury in all cases in which trial by jury was a matter of right when

the first state constitution was established in 1776. See: *W.J. Dillner Transfer Co. v. Pennsylvania Public Utility Comm'n.,* 191 Pa.Super. 136, 149, 155 A.2d 429, 435 (1959); 7 Std.Pa. Prac.2d § 46:1 (1982). Civil actions at law for personal injuries are among those suits in which there is a right of trial by jury. Cf. *Murphy v. Cartex Corp.,* 377 Pa.Super. 181, 192, 546 A.2d 1217, 1222 (1988); *Brenckle v. Arblaster,* 320 Pa.Super. 87, 93, 466 A.2d 1075, 1077 (1983). The general rule in Pennsylvania is that the jury to which a litigant is entitled as a matter of right is a twelve (12) person jury. This is the number established as a matter of common law practice at the time the right became constitutionally guaranteed. See: *Blum v. Merrell Dow Pharmaceuticals,* 385 Pa.Super. 151, 164–165, 560 A.2d 212, 219 (1989). See also: *Commonwealth v. Fugmann,* 330 Pa. 4, 29, 198 A. 99, 111 (1938); *Smith v. Times Publishing Co.,* 178 Pa. 481, 498–499, 36 A. 296, 297 (1897); *Wellitz v. Thomas,* 122 Pa.Super. 438, 440, 185 A. 864, 865 (1936); *Commonwealth v. Collins,* 268 Pa. 295, 299, 110 A. 738, 739 (1920). This right, however, may be waived. Therefore, a litigant is entitled to a verdict from a full twelve person jury in a civil proceeding only where the right has not been waived expressly or by implication. See: *Kardibin v. Associated Hardware,* 284 Pa.Super. 586, 426 A.2d 649 (1981); *Warden v. Zanella,* 283 Pa.Super. 137, 140, 423 A.2d 1026, 1028 (1980); *Stathas v. Wade Estate,* 251 Pa.Super. 269, 380 A.2d 482 (1977); *Cohen v. Sykes,* 180 Pa.Super. 427, 118 A.2d 208 (1955), citing *Wright v. Barber,* 270 Pa. 186, 113 A. 200 (1921).

■ In the instant case, although the defendants, including Fibreboard, initially invoked the right to a full twelve person jury, they later waived that right. Cf. *Stathas v. Wade Estate, supra* at 274, 380 A.2d at 484 (1977); *Neely v. J.A. Young & Co.,* 198 Pa.Super. 196, 199, 181 A.2d 915, 916–917 (1962); *Cohen v. Sykes, supra.* At the time the jury was empaneled, appellant and its co-defendants acquiesced in a trial by a jury consisting of eight persons. Fibreboard did not object to the number of jurors until after one of the eight jurors became ill and was excused. At that time, Fibreboard joined in a

request for a mistrial. It contended that it had not consented to a trial by less than eight jurors.

The decision in *Blum v. Merrell Dow Pharmaceuticals, supra,* upon which Fibreboard relies, is not applicable to the circumstances of this case. In *Blum,* the defendant/appellant had demanded a jury trial and a twelve member jury had been empaneled. After one juror had been excused for illness, however, the verdict had been rendered by only eleven jurors. A three judge panel of the Superior Court held that defendant/appellant, having invoked the constitutional right to trial by jury, was entitled to a decision by twelve (12) jurors. The *Blum* Court considered the historical significance of the language in Article I, § 6 of the Pennsylvania Constitution which states that "trial by jury shall be as heretofore...." and concluded that,

> Although there is no denying that a scrutiny of the Constitutional debates, treatises on the matter and case law leave one without any ("concrete") insight as to the origin of the number 12, there is no doubt that this number was considered an essential element of a jury and was incorporated into our inviolate constitutional right of a trial by jury. See *Fugmann, supra; Wellitz, supra; Collins, supra; Smith, supra.*
>
> > As an "essential" feature of a trial by jury, the number 12 is implicit in the term "jury" as found in the Pennsylvania Constitution and is not subject to change except by way of a constitutional amendment, or a pronouncement of the Pennsylvania Supreme Court re-examining its initial interpretations of the "jury trial" question and altering its stance as occurred in *Williams v. Florida,* 399 U.S. 78, 102, 90 S.Ct. 1893, 1907, 26 L.Ed.2d 446 (1970), by the United States Supreme Court, wherein it held that the Sixth Amendment did not require a 12–man jury trial in criminal cases, and the fact that the jury at common law was composed of precisely 12 was an historical accident, unnecessary to effect the purposes of the jury system and wholly without significance "except to mystics".

*Blum v. Merrell Dow Pharmaceuticals, supra* at 165, 560 A.2d at 219. *Blum,* therefore, stands only for the proposition that where a litigant has invoked the right to a jury trial, the verdict must be by a jury of twelve. It does not guarantee a verdict by eight jurors where a party has agreed to a trial before a jury of less than twelve persons. When the right to trial by jury has been waived, as in the instant case, a litigant is entitled to a trial that comports with the rules of procedure according to which he has agreed to be tried.

In the instant case, by acquiescing in the empanelment of eight jurors, Fibreboard consented to the procedure established by Philadelphia Civil Rule 1007.2. This rule does not guarantee a verdict by eight jurors. It provides that a jury

> ... shall consist, initially, of eight (8) members. Trial in such cases shall continue so long as at least six (6) jurors remain in service. If the number of jurors falls below six (6), a mistrial shall be declared upon prompt application therefor by any party then on record.

We observe, as did the trial court, that this rule is frequently applied to the trial of asbestos cases in Philadelphia. It could be expected that counsel for appellant was familiar with the rule and the procedure followed pursuant thereto. Therefore, it was not error for the trial court to proceed with seven jurors after one of the original eight jurors had been excused because of illness.

### III. Apportionment of Liability Among Asbestos Manufacturers Who Were in Bankruptcy

Fibreboard complains that in apportioning liability among defendant manufacturers, the trial court permitted the jury to apportion liability among only those manufacturers who were solvent. It refused to permit apportionment among those defendants who had entered bankruptcy proceedings.

In Pennsylvania, the Comparative Negligence Act, 42 Pa. C.S. § 7102, directs that each tortfeasor shall be liable for a portion of the total damages, to be determined by the ratio between the amount of each party defendant's causal fault and the total fault attributed to party defendants against whom

the plaintiff is entitled to recover. Apportionment of liability among all defendants is designed to allow responsible defendants to contribute to the award in proportion to their degree of negligence. *Embrey v. Borough of West Mifflin*, 257 Pa.Super. 168, 185, 390 A.2d 765, 774 (1978), citing *Anstine v. Pennsylvania Railroad*, 352 Pa. 547, 549, 43 A.2d 109 (1945); *Mong v. Hershberger*, 200 Pa.Super. 68, 186 A.2d 427 (1962). The legislature in Pennsylvania has also adopted the Uniform Contribution Among Tort-feasors Act, 42 Pa.C.S. § 8321, which entitles a joint tortfeasor to recover contribution from another joint tortfeasor after "he has by payment discharged the common liability or has paid more than his pro rata share thereof." 42 Pa.C.S. § 8324(b).

In accordance with the automatic stay provisions of the Bankruptcy Code, Title 11 U.S.C.A. § 362, six alleged tortfeasors did not participate in the Ottavio trial. While the automatic stay provisions of Section 362 preclude the plaintiffs from commencing or continuing litigation against debtors who seek Chapter 11 reorganization, solvent co-defendants in suits such as those sub judice may be compelled to proceed to trial without the participation of potential joint tortfeasors. See: *Gold v. Johns–Manville*, 723 F.2d 1068 (3d Cir.1983); *Lynch v. Johns–Manville*, 710 F.2d 1194 (6th Cir.1983); *In re Related Asbestos Cases*, 23 B.R. 523 (N.D.Cal.1982). In response to a challenge by solvent defendants to the absence of the bankrupt parties on the basis of hardship and judicial economy, the court in *Gold, supra*, appropriately observed:

[U]nder the applicable federal law the Chapter 11 debtors are potential joint tortfeasors and not indispensible parties to the cases now under review. *Field v. Volkswagenwerk–AG*, 626 F.2d 293, 298 n. 7 (3d Cir.1980). Under New Jersey law, a party compelled to pay more than its proper share of a tort recovery may seek contribution from the other joint tortfeasors. 2A N.J.Stat.Ann. § 15–5.3 (West Supp.1983); *Tino v. Stout*, 49 N.J. 289, 300, 229 A.2d 793, 799 (1967). In effect, then, by ordering trial to go forward, the district court judges have simply shifted the burden of pursuing Johns–Manville from the plaintiffs to whichever

defendants are ultimately judged responsible for inflicting at least part of the harm alleged. This, of course, as *Tino v. Stout* makes clear, is the rationale behind New Jersey's joint tortfeasor and right-to-contribution statutes.

*Gold v. Johns–Manville, supra* at 1076.

The scheme of contribution adopted by the Pennsylvania legislature is consistent with the rationale discussed in *Gold.* Nothing precludes the solvent manufacturers in this case from obtaining contribution from the bankrupts when (and if) they emerge from reorganization proceedings. To hold otherwise would be to require an exercise in futility, for any finding of fault against the bankrupt manufacturers would be unenforceable under the automatic stay provisions of the Bankruptcy Code. In *Simpson v. Pittsburgh Corning Corp.,* 901 F.2d 277 (2nd Cir.1990), *cert. denied,* 497 U.S. 1057, 111 S.Ct. 27, 111 L.Ed.2d 840 (1990), the evidence at trial established that asbestos products manufactured by Johns–Manville had been used extensively at the plaintiff's worksite. Defendant–Pittsburgh Corning argued that Johns–Manville should have been added to the list in the verdict form of potential tortfeasors. The trial court denied the request, and the Court of Appeals affirmed. The court explained:

> Pittsburgh Corning still retains the right to pursue the Manville Trust and, if it can establish liability, obtain contribution. The jury's allocation of responsibility among the companies it was permitted to consider does not preclude a pro rata reduction of the shares the jury assigned, in the event that Manville is subsequently determined to bear responsibility for some proportionate share of plaintiff's damages. Appellant's concerns about the difficulty of obtaining contribution are largely conjectural. The Manville bankruptcy caused many people major difficulties.

*Id.* at 284.

Finally, the bankruptcy rules seem to preclude an apportionment of liability for a party operating under the automatic stay provisions of the Bankruptcy Code. As the court observed in *Dartez v. Fibreboard Corp.,* 765 F.2d 456 (5th Cir.1985): "§ 362(a)(6) of the Bankruptcy Code, which prohib-

its 'any act to assess a claim against the debtor . . .', seems to prevent any determination in the current action of the percentage of liability attributable to [bankrupts] Johns–Manville and Unarco." *Id.* at 474.

The above authorities adequately support the trial court's decision which refused to submit to the jury a verdict sheet including the bankrupt manufacturers of asbestos products. Fibreboard may bring a future action for contribution against any defendant who emerges from bankruptcy. This will adequately preserve its rights with respect to the claim made by Ottavio.

> IV. Was Fibreboard entitled to a jury instruction that Ottavio had the right to bring a second action if he developed future asbestos related injury?

The only manifestation of physical change to Ottavio was an asymptomatic pleural thickening. Because the jury could have found that pleural thickening was asymptomatic and, therefore, not a compensable injury, Fibreboard argues that the trial court's instruction allowing recovery for possible future disease was error. The jury should have been instructed, it is argued, that if subsequent asbestos related injury were to occur, Ottavio would have been able to recover for such injury in a subsequent action. A correct statement of the law, Fibreboard contends, was contained in a point for charge submitted to and rejected by the trial court as follows:

> If you find that any plaintiff does not have an asbestos related disease, then your verdict must be in favor of defendants and against such plaintiffs. Under these circumstances, you should be aware that at such time, if ever, as such a plaintiff may, in the future, develop an asbestos related disease, he would be permitted another day in court.

In reviewing alleged error in jury instructions we apply the standard recited in *Sweitzer v. Dempster Systems,* 372 Pa.Super. 449, 539 A.2d 880 (1988), as follows:

> Where the motion for a new trial is based upon the sufficiency of the jury charge, we must examine the charge in its entirety against the background of the evidence to deter-

mine whether error was committed. If an appellate court concludes that the charge was erroneous, a new trial will be granted only if the jury charge might have prejudiced the appellant. A new trial will be granted even though the extent to which the appellant had been prejudiced is unascertainable. *Gallo v. Yamaha Motor Corporation USA*, 363 Pa.Super. 308, 321–322, 526 A.2d 359, 366 (1987).

*Id.* at 453, 539 A.2d at 882. See also: *Leaphart v. Whiting Corp.*, 387 Pa.Super. 253, 564 A.2d 165 (1989), *allocatur denied*, 525 Pa. 619, 577 A.2d 890 (1990); *Jistarri v. Nappi*, 378 Pa.Super. 583, 549 A.2d 210 (1988). An alleged inadequacy in jury instructions constitutes trial error if the jury was probably misled by what the trial judge said or there is an omission in the charge which amounts to fundamental error. *Voitasefski v. Pittsburgh Rys. Co.*, 363 Pa. 220, 226, 69 A.2d 370, 373 (1949). See also: *Sweeny v. Bonafiglia*, 403 Pa. 217, 221, 169 A.2d 292, 294 (1961); *Giorgianni v. DiSanzo*, 392 Pa. 350, 140 A.2d 802 (1958); *Hajduk v. Fague*, 200 Pa.Super. 55, 186 A.2d 869 (1962). As a general rule, refusal to give a requested instruction containing a correct statement of law is ground for a new trial unless the substance thereof has otherwise been covered in the court's general charge. *Butler v. DeLuca*, 329 Pa.Super. 383, 390, 478 A.2d 840, 844 (1984); *Furey v. Thomas Jefferson University Hosp.*, 325 Pa.Super. 212, 227, 472 A.2d 1083, 1091 (1984).

A jury instruction essentially identical to that suggested by appellant in this case was approved by the majority in *Manzi v. H.K. Porter Co.*, 402 Pa.Super. 595, 587 A.2d 778 (1991), *reargument denied*, 410 Pa.Super. 283, 599 A.2d 992 (1991). The instruction in *Manzi*, which allowed a second action if compensable asbestos injury thereafter arose, seriously eroded the prior strict application of the single cause of action doctrine in asbestos litigation. In support thereof, it may be observed that a rigid adherence to a single claim approach has proven unfair and unworkable for both plaintiffs and defendants alike in asbestos actions.

To alleviate the difficulties engendered by this single claim approach in asbestos actions, we have now joined the majority

of jurisdictions which permit separate actions for separate asbestos diseases. In *Marinari v. Asbestos Corporation, Ltd.,* 417 Pa.Super. 440, 612 A.2d 1021 (1992), we reasoned that, in an action for exposure to asbestos, a plaintiff's claim may encompass only the harm caused by the disease or diseases which have become manifest and that a later separate action may be pursued if and when a separate disease occurs. It follows that in the instant case Ottavio was entitled to recover compensation only for that disease, if any, which existed at the time of trial. He could not recover in an action for asymptomatic pleural thickening monetary damages for the risk of a future disease such as cancer. Damages for a distinct, separate disease, if and when an additional disease should develop at a later time, can be recovered in a second action. Because the trial court failed to give such an instruction, appellant is entitled to a new trial.

Finally, Fibreboard contends that the trial court's jury instructions were internally inconsistent and that the verdict of the jury was excessive. Our review discloses no merit in these contentions. Similarly, there is no merit in appellant's contention that Pa.R.C.P. 238 is unconstitutional. See: *Laudenberger v. Port Authority of Allegheny County,* 496 Pa. 52, 436 A.2d 147 (1981); *Dranzo v. Winterhalter,* 395 Pa.Super. 578, 577 A.2d 1349 (1990); *Dietrich v. J.I. Case Co.,* 390 Pa.Super. 475, 568 A.2d 1272 (1990). See also: *Templin v. Hansford,* 737 F.Supp. 27 (E.D.Pa.1990).

Reversed and remanded for a new trial. Jurisdiction is not retained.