# Eisbacher v. Davidson

C.P. of Lakhawanna County, No. 2010 CIV 5348.

*Michael J. Pisanchyn,* for plaintiff
*Daniel E. Cummins,* for defendant Davidson; *Cynthia E. Banks,* for defendant Geico Indemnity Co.

MAZZONI, *J.,* March 15, 2013—

## I. INTRODUCTION

What is before this court is plaintiff Jessica Eisbacher's ("Eisbacher") motion for post-trial relief. For reasons articulated herein, said motion is hereby denied.

Defendant Richard J. Davidson ("Davidson") had filed a "conditional motion for post-trial relief" and accompanying brief, to which defendant Geico Indemnity

Co. ("Geico") filed joinder submissions. The conditional motions request that the issues referenced therein are to be raised "only in the event that plaintiff is granted a new trial."[1] In that plaintiff's motion for post-trial relief is hereby denied, the issue(s) raised in defendants Davidson and Geico's conditional post-trial motion is now rendered moot.

## II. PROCEDURAL HISTORY

On August 2, 2010, plaintiff Jessica Eisbacher, through Attorney Michael J. Pisanchyn, Jr., filed a civil complaint against defendants Richard J. Davidson and Geico Indemnity Co. The complaint relates to a two vehicle collision, which occurred on October 31, 2008 at the intersection of Pittston Avenue and Hickory Street in Scranton, County of Lackawanna. At the time of this collision, this intersection was controlled by a traffic light.

The complaint contains a "negligence" count (count one) against defendant Davidson and a "breach of contract" claim (count two) against Geico for underinsurance motorist benefits. Defendant Geico was plaintiff Eisbacher's underinsurance motorist carrier.

Prior to trial, defendant Davidson filed a motion to bifurcate trial, requesting the bifurcation of the negligence claim asserted against defendant Davidson from the

---

1. At the time of argument, plaintiff had not filed a responsive brief to defendants' conditional post-trial motions. The plaintiff's attorney was provided with an additional 10 days from the date of argument to file a responsive brief. No responsive brief was filed.

breach of contract claim asserted against the UIM carrier Geico. By order dated May 22, 2012, this court adopted the stipulation of the parties which provided, in part, that (a) Geico would not participate in the trial and (b) Geico agrees to pay any verdict in excess of defendant Davidson's automobile insurance policy limits, up to Geico's underinsurance motorist limits.

This case was originally scheduled for trial on May 29, 2012. At the pre-trial conference on April 25, 2012, it was discovered that plaintiff's counsel Pisanchyn intended to call additional witnesses that were not specifically listed on the parties' joint pre-trial submission. To avoid any prejudice to defendant and to avoid imposition of a preclusion sanction against plaintiff, this court, with some degree of reluctance, continued the trial to October 1, 2012. (See transcript of proceedings of May 22, 2012 and court order of May 22, 2012).[2]

The case proceeded to trial on October 1, 2012. At all times relevant thereto, plaintiff claimed that she had the green light as she proceeded into the subject intersection. (N.T. 10-3-12 at 17). Conversely, defendant Davidson, called as on cross, claimed that he did not run the red light and, the last time he looked, the light was green. On further cross examination, defendant Davidson noted that the light could have possibly turned red when he was

---

2. In addition to the late and untimely disclosure of fact witnesses identified by plaintiff's counsel Pisanchyn on April 25, 2012, plaintiff's counsel Pisanchyn, in January 2012 and well after the case was certified for trial, produced a report from a vocational expert. Both of these untimely and late disclosures were the subject of defense counsel's motions in limine requesting a preclusion sanction.

under it. (N.T. 10-2-12 at 251, 254-55).

The case concluded on October 5, 2012. The jury concluded that both plaintiff and defendant were negligent. The jury, however, found plaintiff Eisbacher to be 60% negligent, thereby precluding any recovery.

On October 15, 2012, plaintiff Eisbacher through counsel filed a timely post-trial motion pursuant to Pa.R.C.P. 227.1. In this motion and in the accompanying brief, plaintiff Eisbacher raised the following challenges:

A. Plaintiff was improperly precluded from introducing critical evidence for impeachment purposes under Pa.R.E. 804(b)(3);

B. Plaintiff was prejudice by the conduct of the trial court;

C. The jury was improperly instructed on contributory negligence.[3]

After a thorough review of the record, plaintiff's

---

3. In her post-trial motion, plaintiff fails, in part, to specifically idetify grounds for relief and further fails to identify "how the grounds were asserted in pre-trial proceedings or at trial." Pa.R.C.P. 227.1(b)(2). To the extent that paragraph 10 in plaintiff's motion may raise a "weight of the evidence" claim, this rather vague assertion was not addressed as a specific issue in counsel's brief in support thereof. Paragraph 10 of the motion states:

10. In sum, there was no evidence presented that the plaintiff was not exercising ordinary care to keep a proper lookout.

In accordance with the law on intersectional collisions, the issue of proper care when entering the subject intersection was a factual issue to be resolved by the jury. Because of the fact that a "weight of the evidence" claim was not specifically identified in plaintiff's motion and not specifically addressed in plaintiff's brief, this issue is hereby considered waived.

counsel Pisanchyn's challenges are totally unsupported and constitute a desperate attempt to seek a reversal at all costs. Plaintiff's motion and brief in support thereof are replete with factual misrepresentations, as will be noted herein. These misrepresentations appear to be intentional in nature with a corresponding purpose to distort the facts and to mislead the reader.

Plaintiff's counsel Pisanchyn's attack on the conduct and integrity of the court simply reflects an advocate who is argumentative and reluctant to accept the court's ruling. "A trial court's rulings on evidentiary questions are controlled by the discretion of the trial court and [an appellate] [c]ourt will reverse only for clear abuse of that discretion." *Commonwealth v. Foy*, 612 A.2d 1349, 1351 (Pa. 1992), citing *Commonwealth v. Dollman*, 541 A.2d 319(Pa. 1988); *Commonwealth v. Cargo*, 444 A.2d 639 (Pa. 1982). "Admission of rebuttal evidence is a matter within the sound discretion of the trial court." *Commonwealth v. Jones*, 610 A.2d 931, 943 (Pa. 1992), citing *Commonwealth v. Miller*, 417 A.2d 128, 136 (Pa. 1980). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence or the record." *Commonwealth v. Kubiac*, 550 A.2d 219, 223 (Pa. 1988), *app. denied*, 563 A.2d 496 (Pa. 1989). An abuse of discretion may result where the trial court improperly weighed the probative value of evidence admitted against its potential for prejudicing the defendant. See *Commonwealth v.*

*Wharton*, 607 A.2d 710, 719 (Pa. 1992).

## III. DISCUSSION

*A. WHETHER PLAINTIFF WAS IMPROPERLY PRECLUDED FROM INTRODUCING CRITICAL EVIDENCE FOR IMPEACHMENT PURPOSES UNDER Pa.R.E. 804(d)(3).*

Plaintiff alleges that this court precluded plaintiff's counsel from using a recorded statement made by defendant Davidson to his insurance adjuster. (See plaintiff's motion ¶5). The court agrees with plaintiff counsel's recitation of legal authority on the subject, but disagrees with plaintiff's counsel Pisanchyn's recitation of the facts. In his motion and brief, plaintiff's counsel Michael J. Pisanchyn deliberately failed to recite how this issue was raised and how it was resolved without resulting prejudice to the plaintiff.

On the eve of trial, plaintiff's counsel Pisanchyn forwarded a subpoena to Ms. Hope Rose, a State Farm adjuster who resided some distance from Scranton, Pennsylvania (Concordville, PA). Ms. Rose was another witness who was not disclosed on the Joint Pre-Trial submission. Sometime after the subject accident, more specifically on November 28, 2008, Ms. Rose had a telephonic discussion with defendant Davidson, her insured. As a result of this discussion, Ms. Rose recorded, in the form a log entry, what defendant Davidson told her.

On September 28, 2012, this court received from

attorney Jordan D. Koko, attorney for Ms. Rose, a motion to quash plaintiff's subpoena to attend and testify. In addition to stating the entire historical background regarding Ms. Rose's anticipated testimony, this motion stated that on Wednesday, September 26, 2012, plaintiff's counsel faxed a subpoena to Ms. Rose, instructing her to appear for trial on October 1, 2012. This subpoena allegedly failed to comply with the requirement of Pa.R.C.P. 234.2, relating to proper service and payment of witness attendance fees. As noted in the motion, counsel for Ms. Rose informed the court that he was not available for a court appearance on October 2 and October 3, 2012 and that Ms. Rose had a pre-planned vacation scheduled for October 4th through October 9, 2012. Upon receipt of this motion, this court scheduled an argument on the motion to quash for Monday October 1, 2012, prior to trial commencing. Prior to the argument, the parties entered into a stipulation, which reads as follows:

## STIPULATION OF THE PARTIES

The parties, by and through their respective representative counsel, hereby agree as follows:

1. The Parties agree that the adjuster notes are authenticated and will be allowed to be used at the time of trial.

2. The Parties agree that the jury may be advised that these notes were made contemporaneously with any statements taken and taken on behalf of and for the benefit of the defendant.

3. The Parties agree as has been advised by adjuster's attorney that if the adjuster were to be asked "if she recalls anything further other than what is stated in the notes (sic) she would state "I do not recall" to all of those questions.

4. The Parties specifically agree to a reading and/or referencing of note 106 as to the statements contained in exhibit 1 of this stipulation. Any use of the remaining notes would be subject to admissibility pursuant to Pa.R.E.

5. The notes other than note 106 are stipulated authentic and their admissibility shall be governed by the applicable Pennsylvania Rules of Evidence.

6. Obviously, any wording in reference to insurance would not come before the jury should the court rule that it cannot.

7. It is further agreed by the parties that the Notice to Attend directed to Hope Rose is hereby withdrawn, and that she need not attend the trial of this matter.

(See stipulation filed of record on October 2, 2012) (emphasis added).

In conformity with the stipulation and without objection, the court instructed the jury as follows:

Okay, ladies and gentlemen, in my conversations with the attorneys, the attorneys indicate they have a stipulation. A stipulation is nothing more than an

agreement. And the stipulation involves an individual by the name of Hope Rose. And in lieu of having Hope Rose come here and testify, the parties have agreed to go ahead and read into the record as evidence a statement that Hope Rose took of the defendant in this case.

Now, Hope Rose was an individual who was acting on behalf of the defendant and then had an occasion to take a statement from the defendant. This was a telephonic conversation, a telephonic statement that was taken on November 28 of 2008.

And the statement reads as follows, this is the defendant's statement: Mr. Davidson, the defendant in this case, believed that he had a green light. He admits that he had sun glaring at him. He confirmed that he was rotated and spun around and collided with a Mr. Russel.

(See N.T. 10-2-12 at 245-46) (emphasis added).

As articulated above, plaintiff counsel Pisanchyn's posture of this issue in his brief is nothing short of a deliberate attempt to misrepresent the development of this issue and how it was ultimately resolved. Plaintiff's counsel Michael J. Pisanchyn claims that this court precluded him from using the statement for impeachment purposes when the record shows that he entered into a stipulation, the relevant portions of which were read to the jury without objection. Plaintiff's counsel used the stipulation in cross-examining the defendant and further referenced the stipulation in his closing. (N.T. 10-2-12 at

259-60 and N.T. 10-4-12 at 64).

Counsel's framing of this issue and request for relief thereon are based on a complete fabrication of the facts without any concern for the details of record.

## B. WHETHER PLAINTIFF WAS PREJUDICE BY THE CONDUCT OF THE TRIAL court.

Plaintiff's attorney Michael J. Pisanchyn alleges that the court's conduct and demeanor created an unfavorable impression of plaintiff, her witnesses, and/or plaintiff's counsel. Attorney Pisanchyn identifies the following instances:

### 1. Lucille Eisbacher's Testimony.

Plaintiff's attorney directs his first challenge concerning the court's conduct to Lucille Eisbacher's testimony. Lucille Eisbacher is the mother of plaintiff. Plaintiff's counsel Pisanchyn stated that this was one instance in which he was admonished by the court within the hearing of the jury. Once again, plaintiff's counsel fails to recite the full context of the development of this matter and has failed to lodge an objection on the record.

Lucille Eisbacher was called to the stand to tell the jury how she found out about the subject car collision. She testified that she received a call and was then asked what was related to her. Defense counsel objected. The objection was sustained and the court, at sidebar, asked plaintiff's counsel to provide the court with a proffer of her anticipated testimony. The court permitted plaintiff's

counsel to relate to the jury that Lucille Eisbacher received a call informing her that her daughter was in an accident and, as a result thereof, Lucille Eisbacher proceeded to the scene. The court specifically told plaintiff's counsel that any information about someone running the red light was impermissible as hearsay. Despite this court's directive, the following testimony was elicited and the following sidebar was recorded:

Q. Ma'am, did you receive any information as a result of the telephone call that your husband received?

A. Yes.

Q. And what was related to you? What was the information you received?

A. The information we received was that someone had run a light and there was a collision.

MR. CUMMINS: Your Honor, object.

THE court: Sidebar. Sidebar.

I'm going to direct the jury to exclude the nature of that statement, those statements that was (sic) just proffered by the witness.

Sidebar.

(The following discussion was held at sidebar:)

THE COURT: Now we previously had a sidebar here in relationship to Dan Cummins' objection. After asking counsel for a proffer, I permitted counsel simply to go

ahead and extract from this witness that she received the call and that as a result of that call she was proceeding to an accident scene. There was an accident involving her daughter, and she was proceeding to the accident scene. That was the extent of this court's directive. And this witness in response to this question had went ahead and went beyond the four corners of this court's directive.

MR. PISANCHYN: Just so that I can be heard. The issue is, is that this is clearly not hearsay. The fact is that it's not for the truth of the matter arrested. The fact is that she received this information and then she goes to the scene.

MR. CUMMINS: Your Honor --

MR. PISANCHYN: Without that information --

THE COURT: I know, keep it down.

MR. PISANCHYN: What's the point unless she knows she hears it.

THE COURT: The point is that she related hearsay evidence on the very nature, the very issue that we're here for today. That's it. Go back and ask the rest of the questions.

(In open court as follows.)

THE COURT: The court had sustained the objection of defense counsel. And I want to make one explanation so you understand where we're going with the objection

and with the witness' testimony. What she had indicated as to the subject matter of what she just testified to is hearsay. It's coming from another source. It's not coming from the parties. And hearsay generally is not permitted and that's why I sustained the objection. So that's the whole subject of the discussion that I had with counsel.

Okay. Go ahead.

(N.T. 10-2-12 at 7-10) (emphasis added).

At the time of the aforementioned sidebar, the jury was a significant distance away from the attorneys and the court. Secondly, and as the above transcript reveals, the court was the one who directed plaintiff's counsel Pisanchyn to "keep it down." After defendant's objection was sustained in part, plaintiff's counsel continued to elicit testimony from the witness about someone running a red light.

Plaintiff's counsel Pisanchyn, throughout his brief, makes general references to the court's alleged "anger" and its objectionable "tone and demeanor." The record on this issue simply speaks for itself. The record will reveal that an objection was raised and that the court sustained it in part, thereby providing plaintiff's counsel with the permissible range of Lucille Eisbacher's testimony. The record also reveals that the court's directive was violated and the court proceeded to instruct the jury as to what had occurred concerning the nature of hearsay testimony. Lastly, and more importantly, plaintiff's counsel failed to record an objection over the court's ruling or the manner

in which it was communicated.

In addition to the above, plaintiff's attorney cites another instance involving Lucille Eisbacher's testimony where he claims that the court's conduct was improper. Prior to plaintiff's redirect of Lucille Eisbacher, plaintiff's counsel asked for a sidebar to relate to the court that he intended to ask Lucille Eisbacher why her daughter is not treating and why she is going to the gym. Defense counsel objected to any anticipated testimony from the witness that her daughter does not have any insurance.

At the outset of the sidebar, defense counsel cautioned plaintiff's counsel Pisanchyn to "whisper" for fear that the jury would hear him. (N.T. 10-2-12 at 44). What had ensued was a rather lengthy sidebar, during which the jury was given a break. (N.T. 10-2-12 at 44-60). As noted in the record, this issue was raised the day before and the court asked the parties to provide the court with authority for their respective positions. (N.T. 10-2-12 at 44). The defense provided the court with authority upon which he relied. (N.T. 10-2-12 at 52-3). When asked about authority from the plaintiff, the following exchange took place:

> THE COURT: Now, do you guys have a case to support your position that a witness can get up and say: I can't afford it because I don't have any insurance, auto or otherwise?
>
> MR. YAZINSKI: Well, Judge, I don't believe there's a case that says you can't say health insurance.
>
> THE COURT: I'm just saying do you have a case to

present to me that says that a witness can come up and say: I can't afford it because I don't have any insurance?

MR. YAZINSKI: Judge, I don't have a case.

(N.T. 10-2-12 at 55-56).[4]

The court ultimately sustained defense counsel's objection as to any reference to the lack of insurance but permitted plaintiff's counsel to proceed with the other proffered questions. (N.T. 10-2-12 at 56). Once again, plaintiff's counsel in his brief recites a portion of the sidebar which of course is taken out of context. The entire sidebar is nothing more than a discussion between counsel and the court over an evidentiary issue. There are no instances during this sidebar where the court acted inappropriately, as argued by plaintiff's counsel. This transcript speaks for itself. (N.T. 10-2-12 at 44-60).

### 2. Cross Examination of Defense Vocational Expert.

This challenge involves the court directing plaintiff's counsel to let the witness finish his answer before he proceeded with the next question. It was the same directive that the court had given previously to defense counsel. After the court had advised counsel of same, counsel then proceeded to be argumentative. The transcript of proceedings reveals the following exchange between the court and plaintiff's counsel Pisanchyn:

---

4. Attorney Douglass A. Yazinski is a member of the Pisanchyn Law Firm and was co-counsel for plaintiff.

Q. And you would agree that you're not even giving Miss Eisbacher the eight weeks of time that she was laid up in bed and couldn't even get out of her room, and her mother had to shower her, but that wasn't a wage loss, right, that wasn't an impairment? You said no; right?

A. No, I said she has no loss of earning capacity - -

Q. Did she have a wage loss?

THE COURT: Mike, let him finish, all right?

MR. PISANCHYN: But my question was simply, did she have a wage loss?

THE COURT: I know that but he's getting it out and you're banging another question in. Okay? Just extend him the same respect, and I admonish defense counsel, let's hold it, ask a question and let him answer.

MR. PISANCHYN: And I'm just - when I ask a yes or no, I would just hope that he can answer it with a yes or no.

THE COURT: We didn't get down that road. Let's just let him answer the question. That wasn't a yes or no question. It was a question he was in the process of answering the question. I don't want to jump in your case or Dan's case, but the witness is trying to respond and you're into your next question. Okay?

MR. PISANCHYN: Yes, Your Honor.

THE COURT: Okay. Go ahead, I don't know what question you asked.

THE WITNESS: She may have had some - - I'm sorry.

THE COURT: Go ahead.

A. I think the answer is she may have some lost wages after the accident, but she has no loss of earning capacity, and I believe her earning capacity was clearly established before this accident in sedentary work. So the idea that she went back to Red Lobster was really medically contraindicated in light of what Dr. Olsen had said.

(N.T. 10-2-12 at 171-72).

As noted above, the court was simply directing counsel to provide the witness with an opportunity to fully answer a question, which he ultimately did. Furthermore and in contradiction to plaintiff's baseless claim that the court was acting as an advocate, this court, as it always does, instructed the jury on the role of the court in the proceeding before them. This court instructed the jurors as follows:

Now, ladies and gentlemen, during the course of this case, I have not attempted to indicate any opinion on my part concerning the credibility of a particular witness or the weight of a certain type of evidence that was introduced, and I would not want you to think that I did. That is because it is for you and you alone to determine the credibility of each witness and the

weight to be afforded to the evidence that has been introduced during the course of this trial. During the course of this trial, I ask very little questions but when I asked those questions it was only for purposes of my clarification not necessarily to go ahead and emphasize any preference that I may have in this case because I have no preference. I sit up here as I indicated to you the umpire behind the plate, I call balls and strikes. I have no dog in the fight. My job is to go ahead and provide the parties with a fair ability and a fair opportunity to try their case.

(N.T. 10-5-12 at 82).

Once again, plaintiff's counsel Pisanchyn did not record an objection relating to this challenge.

### 3. The Philadelphia Query.

This issue was cited in plaintiff's brief but not specifically raised in plaintiff's motion and plaintiff's counsel again failed to lodge an objection. At the conclusion of plaintiff's counsel's cross examination of the defense vocational expert, Dr. Jason Walker, plaintiff's counsel Pisanchyn asked Dr. Walker a totally irrelevant question, which had impermissible overtones attached to it. The record reflects the following:

Q. Just for instance, you make $13,000 here today how many - -

A. No, I don't make $13,000; the $13,000 goes to CEC Associates.

Q. How many $13,000 do you know would equal $750,000 dollars? You have to divide it?

A. I don't know. I would have to divide it.

Q. And one last thing, do you know how to get back home to Philadelphia?

A. Yes.

Q. Okay, I just wanted to --

MR. PISANCHYN: Thank You.

THE COURT: What was the nature of that question?

MR. PISANCHYN: Well, I just thought he might need directions because he's not from around here, Your Honor.

THE COURT: And you were going to help him out to get back to Philadelphia.

MR. PISANCHYN: Yes.

THE COURT: Okay.

Any redirect?

(N.T. 10-2-12 at 195) (emphasis added).

The court is cloaked with the authority to exercise reasonable control over the mode and order of interrogation as well as the presentation of evidence. Pa.R.E. 611(a). The aforementioned question as framed and propounded by plaintiff's counsel Pisanchyn could only have served

one of two purposes, either of which is not permissible. It was either an indirect attempt to relate to the jury that the witness was not a local professional or an indirect attempt to demean the intelligence of the witness.[5] In either case and as framed, the question was highly improper. Plaintiff's counsel would prefer this court to sit there like a "potted plant" and permit this rather embarrassing and senseless inquiry.

### 4. Displaying a Video Clip.

This challenge relates to plaintiff's attorney's attempt to show video clips of plaintiff's physician to his vocational expert, Fran Terry, in rebuttal to the defense's vocational testimony from Dr. Walker. (N.T. 10-3-12 at 168-76).

The defense lodged an objection to the video clips and the court requested an explanation because Dr. Olsen's opinions were not referenced in Terry's report. The matter quickly proceeded to a sidebar, where plaintiff's counsel Pisanchyn objected to the court's inquiry in front of the jury. (N.T. 10-3-12 at 170). Plaintiff's counsel Pisanchyn claimed that he and defense counsel had an agreement to permit this testimony. This representation was initially denied by defense counsel. (N.T. 10-3-12 at 173). After a lengthy sidebar, Defense counsel retracted his objection. (N.T. 10-3-12 at 174). Based on defense counsel's retraction and acknowledgment of an agreement, this court overruled defense counsel's objection and

---

5. The jury was previously informed that Dr. Walker had an office in Valley Forge, PA. (N.T. 10-2-12 at 147).

permitted the showing of Dr. Olsen's video clips. (N.T. 10-3-12 at 176).

Plaintiffs counsel took issue with the court's inquiry after objection and in front of the jury. The record reflects that the exchange was nothing less than a professional exchange between counsel and the court over the admissibility of evidence. The court took issue at sidebar with plaintiff's counsel Pisanchyn's suggestion that the court was "contaminating" the jury over the inquiry. (N.T. 10-3-12 at 170).

The sidebar took some time because the court needed to sort out whether there existed an agreement and, if so, the nature thereof. The court was not specifically privy to the agreement which, at first was denounced. The transcript again speaks for itself as to whether this court's inquiry "contaminated" this jury to the detriment of plaintiff's case. It is apparent from plaintiff's brief that any attempt by this court to address a defense objection in front of the jury is looked upon by plaintiff's counsel as an attempt "to prejudice the jury in favor of the defense." This bare accusation is not borne out in the record.

### 5. Independent witness.

Earlier in this proceeding, this court had sustained defense counsel's objection to plaintiff counsel's self-serving characterization of a witness as being an "independent witness." In plaintiff counsel's Pisanchyn's cross examination of defendant Davidson, plaintiff's counsel asked the following question which resulted

in the following objection and ruling:

> Q. You heard from a witness that we're characterizing as independent because he said he doesn't have a dog in the fight --
>
> MR. CUMMINS: Objection, You Honor. Argumentative.
>
> THE COURT: Michael, I indicated to you before I don't want you to put characterizations on these people. It's your assessment that it's an independent witness. I had indicated that earlier so it's a witness. Got it?
>
> MR. PISANCHYN: I'll move forward, Judge.
>
> THE COURT: Good, that's good.

(N.T. 10-2-12 at 262) (emphasis added).

Once again and after having the benefit of a prior ruling on this issue, plaintiff's counsel Pisanchyn proceeded to place a self-serving characterization of a previous witness. This court sustained the objection and did remind counsel of the court's prior ruling, all in front of the jury. This issue would not have been an issue but for plaintiff's counsel Pisanchyn misstep. Plaintiff's counsel seems to prefer that the court simply state its ruling and conduct any amplification thereof at sidebar. This would only lead to a fragmented and convoluted proceeding.

As in most of the other challenges in plaintiff's post-trial submission, plaintiff's counsel did not lodge an objection on the record.

*6. The court and the Jury Foreman.*

One of the most egregious, disparaging, and baseless attacks on the court's integrity is plaintiff counsel Pisanchyn's claims that the court had an alleged "personal relationship with the jury foreman" and that this alleged relationship prejudiced the jury against plaintiff. (See plaintiff's motion ¶7(a) and brief in support thereof section B, last paragraph therein).[6] This attack is simply a one line, one sentence challenge without any cite to the record.

The jury foreman was an individual by the name of Richard M. Mahon, whose deceased father was a tipstaff for a now-retired jurist in Lackawanna County. At the time of voir dire, the court had disclosed to the parties who the juror's father was and that the court had known his father. Plaintiff counsel Pisanchyn's representation that the court knew the juror is categorically untrue and the representation that the court had a personal relationship with him is also categorically untrue. After disclosing who the juror was, plaintiff nonetheless selected him as a juror.

In a desperate attempt to attain a reversal in this case, plaintiff's counsel Pisanchyn has elected to resort to misrepresentations that have no foundation in the record or otherwise. The record is devoid of any such challenge and further devoid of any objection. The unavoidable inference that one may glean from this shallow and baseless representation is that the court had somehow

---

6. Defense counsel's recitation of the events, as referenced in his brief, are accurate. (See defendant Davidson's brief in opposition).

manipulated the results of this case through a juror. This is an allegation that should not be overlooked and should not be considered lightly.

At argument on the post-trial motions, the court had inquired of plaintiff's counsel as to the existence of any evidence concerning the alleged personal relationship between the foreman and the court. Plaintiff's counsel Pisanchyn had indicated that he had none. Plaintiff's counsel had indicated to the court at argument that his conclusion that there existed a personal relationship was based upon the court's knowledge and familiarity with the juror's father and nothing more.

Lastly, the simple fact that the court knows a juror does not serve as a basis for reversible error. The role of the court is to provide the litigants with a fair and impartial opportunity to present their case within the parameters permitted by law and the Rules of Evidence. As it instructed the jury, this court had no interest in the outcome of the case, and the jury was well aware of same.

### 7. Court Acting as an Advocate.

As he has done throughout his motion and brief, plaintiff's counsel pisanchyn makes a general accusation that the trial court "simply substituted itself through all hearings and at trial as counsel for defendant, advocating a defense position instead of simply ruling on the issues." (See section B of plaintiff's brief).[7] Except for generally

---

7. Specific references to plaintiff's brief are precluded because the pages in plaintiff's brief are not numbered.

raising this baseless challenge, plaintiff's counsel fails to cite to any portion of the record to support its position. This challenge appears as an issue under section B of the brief that is left totally untreated therein. In responding to this issue and without comprehensively reviewing every witness's testimony and challenges thereto, this court will rely on the record and, more importantly, those portions of the record that plaintiff has cited for other issues.

## C. WHETHER THE JURY WAS IMPROPERLY INSTRUCTED ON CONTRIBUTORY NEGLIGENCE.

In determining whether or not the court erred in its instructions, the scope of review is to determine whether the trial court committed clear abuse of discretion or error of law controlling the outcome of the case. *Williams v. Philadelphia Transportation Co.,* 203 A.2d 665 (Pa. 1964); *Stewart v. Motts,* 654 A.2d 535 (Pa. 1995). Error in a charge is sufficient ground for a new trial, if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. *Glider v. Com. Dept. of Hwys.,* 255 A.2d 542, 547 (Pa. 1969). A charge will be found adequate unless "the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to fundamental error." *Voitasefski v. Pittsburgh Rys. Co.,* 69 A.2d 370, 373 (Pa. 1949); A reviewing court will not grant a new trial on the ground of inadequacy of the charge unless there is a prejudicial omission of something basic or fundamental. *Sweeny v. Bonafiglia,* 169 A.2d 292, 293 (Pa. 1961);

*Giorgianni v. DiSanzo*, 140 A.2d 802, 805 (Pa. 1958). In reviewing a trial court's charge to the jury, we must not take the challenged words or passage out of context of the whole of the charge, but must look to the charge in its entirety. *McCay v. Philadelphia Electric Company*, 291 A.2d 759, 763 (Pa. 1972).

In this challenge, plaintiff's counsel argues that there was no factual support for the court to instruct the jury on plaintiff's contributory negligence and on a motorist's duty to keep a proper lookout while entering an intersection. Plaintiff claims that there was no evidence that plaintiff was negligent, no evidence of the speed limit in the area, and no evidence that plaintiff was exceeding the limit.

The record is silent as to any objection raised and preserved by plaintiff's counsel as to the court's charge. Secondly, and prior to the court's concluding charge, the court inquired of counsel if there were any objections and attorney Pisanchyn stated that "the charge is acceptable, none, your Honor." (N.T. 10-5-12 at 113). This objection is clearly waived. Pa.R.C.P. 227.1(b).

Notwithstanding plaintiff counsel's obvious waiver of the issue, there existed a plethora of evidence which warranted the aforementioned instruction. Contrary to plaintiff's counsel Pisanchyn baseless assertion that there was no evidence of the speed limit in the area, defendant Davidson testified that the speed limit was 25 MPH. (N.T. 10-2-12 at 268). Secondly, plaintiff's so-called independent witness, Allen Leach, Jr., approximated plaintiff's speed prior to entering the intersection to be 30-35 MPH. (N.T.

10-2-12 at 75). As indicated previously, both plaintiff and defendant each claim to have had the green light.

Because this was an intersectional collision, one would expect conflicting versions. On cross examination, plaintiff Eisbacher was impeached with her deposition as to whether she maintained a proper lookout. In her deposition, she stated that she did not recall whether she looked either way as she approached the intersection. In fact, in her deposition, she stated that she looked straight ahead and never saw defendant's vehicle until it was right in front of her. (N.T. 10-3-12 at 84-85). Accordingly, the issue as to whether the parties maintained the proper lookout was squarely before the jury.

Furthermore, the dynamics of the collision suggested that defendant's vehicle was well into the intersection at the point of impact. Plaintiff testified that her vehicle contacted the passenger's side of defendant's vehicle. (N.T. 10-3-12 at 83). Defendant Davidson claimed that he was two-thirds of the way through the intersection when his vehicle was impacted. (N.T. 10-2-12 at 260). Defendant Davidson claims that plaintiff's vehicle struck the rear quarter panel of his vehicle. (N.T. 10-3-12 at 271).

Once again, the dynamics of the collision, proper lookout, and contributory negligence of both plaintiff and defendant were contested issues of fact and were squarely before the jury for determination. Based on the evidence in this case as to the actions of the parties and the fact that there was a collision that occurred at a controlled intersection, the court instructed the jury on contributory

negligence, (N.T. 10-5-12 at 94), and on a motorist's duties while entering an intersection. (N.T. 10-5-12 at 102-04). *Little v. Jarvis*, 280 A.2d 617 (Pa. Super. 1971); *Spraggins v. Shields*, 456 A.2d 1000 (Pa. Super. 1983); *Smith v. United News Co.*, 196 A.2d 302 (Pa. 1964).

## IV. CONCLUSION

The court finds itself, for the first time, in an awkward position of defending itself from a totally baseless attack on its integrity in a rather lame attempt to seek a reversal.

For reasons that are specifically articulated herein, plaintiff's post-trial motion is hereby denied.

## ORDER

And now, March 15, 2013, upon consideration of plaintiff Jessica Eisbacher's motion for post-trial relief and defendants' Richard J. Davidson and Geico's conditional motions for post-trial relief, briefs in support of and opposition thereto, as well as arguments of counsel, it is hereby ordered and decreed as follows:

1. Plaintiff Jessica Eisbacher's motion for post-trial relief is hereby denied;

2. Defendants' Richard J. Davidson and Geico's conditional motions for post-trial relief are hereby rendered moot.