David and Leontine COLVILLE, H/W, Appellees,

v.

CROWN EQUIPMENT CORPORATION and Omnilift, Inc., Appellants.

Superior Court of Pennsylvania.

Argued June 12, 2001.

Filed Sept. 23, 2002.

Reargument Denied Nov. 27, 2002.

William J. Conroy, Wayne, for Omnilift, appellant.

Benjamin P. Shein, Philadelphia, for appellees.

BEFORE: JOYCE, LALLY–GREEN and KELLY,* JJ.

JOYCE, J.:

¶ 1 Appellants, Crown Equipment Corporation and Omnilift, Inc., appeal from the March 20, 2000 judgment entered in the Court of Common Pleas of Philadelphia County following a $3,843,253.29 jury verdict in favor of Appellees, David and Leontine Colville. Upon review, we vacate

---

* Judge Kelly did not participate in the consideration or decision in this case.

the judgment entered by the trial court and remand for a new trial. The relevant facts and procedural history of this case are as follows.

¶ 2 On October 20, 1994, David Colville sustained an injury to his left foot while operating a Crown RR3020–45 standup forklift during the scope of his employment at Hechinger's, a building supply store in Philadelphia. While attempting to unload a delivery truck, Colville lost control of the forklift and slammed into the truck. During this accident, Colville's foot was expelled from the operator's compartment and was crushed between the wheel of the delivery truck and the base of the forklift.

¶ 3 On October 11, 1996, David Colville filed a strict products liability action against the forklift's manufacturer, Crown Equipment Corporation, and the seller of the forklift, Omnilift, Inc. Mr. Coville's wife, Leontine Colville, also made a derivative loss of consortium claim against Appellants. In their complaint, Appellees alleged that the forklift was defective because it was designed and manufactured without a door enclosing the operator's compartment and did not provide certain warnings. A jury trial commenced on this action on March 8, 1999. At the close of Appellees' evidence, Appellants filed a motion for non-suit alleging that Appellees failed to introduce evidence to support each of the claims. The trial court granted Appellants' motion for non-suit, in part, by dismissing Appellees' lack of warnings claim. However, the trial court denied the motion with respect to the defective design claim, and Appellants proceeded with their defense.

¶ 4 During their case-in-chief, Appellants called expert witnesses to establish that a forklift equipped with a door would not constitute a safer alternative design. Specifically, Appellants' witnesses testified that the addition of a door could prevent operators from jumping out of the forklift in the event of a rollover and that an operator could sustain more serious, if not fatal, injuries if the forklift landed upon him. At a subsequent charge conference on March 11, 1999, Appellants requested that the trial court instruct the jury on the elements of the crashworthiness doctrine. Appellants claimed that this charge was warranted because Appellees had invoked the theory during their opening statement and throughout their case-in-chief. The trial court denied this request upon its determination that it was within the province of the judge to determine whether the forklift was crashworthy and that Appellees had met this burden.[1] N.T. Jury Trial, 3/11/99, at 558. The trial court then informed the parties that it would only instruct the jury on the elements of a traditional Section 402(a) strict products liability claim.[2] *Id.*

1. Although the trial court plainly stated its reasons on the record for refusing to include a crashworthiness charge during the conference, the trial court advanced an alternative reason for its ruling in its 1925(a) opinion. In the opinion, the trial court explained that a crashworthiness charge was unwarranted because "no evidence of crashworthiness was presented" and "there is no evidence of an enhanced injury or second collision." Trial Court Opinion, 12/29/00, at 7. Additionally, the trial court stressed that Appellants "did not argue crashworthiness in [their] closing"

and, as such, "the case was tried and went to the jury as a strict liability case." *Id.*

2. Section 402(a) of the Restatement (Second) of Torts provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and

¶ 5 After the close of the evidence, Appellants requested that the trial court direct a verdict in their favor on the defective design claim. The trial court denied this motion. On March 12, 1999, the jury returned a verdict in favor of Appellees, awarding David Colville $3,000,000.00 on his strict liability claim and Leontine Colville $500,000.00 on her loss of consortium claim. Appellants filed a motion for post-trial relief, which was denied on March 20, 2000. On this same date, the trial court granted Appellees' motion for delay damages and entered judgment in the amount of $3,843,253.29 against Appellants.

¶ 6 On April 11, 2000, Appellants filed a timely notice of appeal with our Court. In their brief, Appellants alleged that the trial court erred when it (1) failed to instruct the jury on the crashworthiness doctrine; (2) excluded evidence of Appellants' compliance with government regulations and industry standards; and (3) determined that federal regulations did not preempt Appellants' state law claims. On July 30, 2001, we affirmed the judgment of the trial court after determining Appellants waived their first issue and that Appellants' second and third issues lacked merit. *Colville v. Crown Equipment Corp.*, 785 A.2d 1023 (Pa.Super.2001) (unpublished memorandum).

¶ 7 On October 31, 2001, Appellants filed a timely petition for allowance of appeal with the Pennsylvania Supreme Court asserting, *inter alia*, that our panel erred when it held that Appellants waived their challenge to the jury instructions. On March 20, 2002, the Pennsylvania Supreme Court granted Appellants' petition and vacated our judgment upon its determination that Appellants properly preserved their challenge to the jury instructions by making a timely objection during the charge conference. *Colville v. Crown Equipment Corp.*, 568 Pa. 61, 791 A.2d 1168 (2002). The Supreme Court then remanded the case to our Court for an exclusive "consideration of the merits of [Appellants'] claim that the trial court erred in failing to instruct the jury on the crashworthiness doctrine." *Id.* at 1168–69. Pursuant to this specific and narrow mandate, we will now address Appellants' claim that the trial court erred when it refused to instruct the jury on the crashworthiness doctrine.

■ ¶ 8 As a preliminary matter, we must set forth the governing standard of review. When determining whether a trial court erred by making an inadequate or insufficient instruction to the jury, "we must examine the charge in its entirety against the background of the evidence to determine whether error was committed." *Ottavio v. Fibreboard Corp. et al.*, 421 Pa.Super. 284, 617 A.2d 1296, 1301 (1992). An error will be found if "the jury charge in its entirety was unclear, inadequate, or tended to mislead or confuse the jury." *Ettinger v. Triangle–Pacific Corp.*, 799 A.2d 95, 106 (Pa.Super.2002); *see also Price v. Guy*, 558 Pa. 42, 46, 735 A.2d 668, 670–71 (1999) ("error will be found where the jury was probably mislead by what the trial judge charged or where there was an omission in the charge").

■ ¶ 9 In their brief, Appellants argue that the crashworthiness doctrine applies in the instant case because the alleged design defect (i.e. the absence of a door on

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

the operator's compartment) did not cause the accident itself. Simply stated, Appellants maintain that Mr. Colville would have crashed the forklift into the delivery truck regardless of the presence of a door. Rather, Appellants contend that the absence of a door only increased or enhanced the severity of the injury incident to the accident. In light of this position, Appellants assert that a jury charge on crashworthiness was necessary, especially where Appellees pursued the case under a crashworthiness theory from the outset of trial. Upon review, we agree.

■ ¶ 10 The Pennsylvania Supreme Court has adopted the strict products liability doctrine enunciated in Section 402(a) of the Restatement (Second) of Torts. *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966). As such, to submit a Section 402(a) products liability case to a jury, it must be shown that "a product was sold in a defective condition unreasonably dangerous to the user or consumer, and that the defect was the proximate cause of the plaintiff's injuries." *Walton v. Avco Corp.,* 530 Pa. 568, 576, 610 A.2d 454, 458 (1992). Additionally, courts of this Commonwealth have specified that a product is defective when it is not fit for the intended use for which it was sold. *Azzarello v. Black Bros. Co. Inc.,* 480 Pa. 547, 559, 391 A.2d 1020, 1027 (1978).

■ ¶ 11 The crashworthiness or second collision doctrine is merely a subset of a Section 402(a) products liability action

and routinely arises in the context of a vehicular accident. *Kupetz v. Deere & Company, Inc.,* 435 Pa.Super. 16, 644 A.2d 1213, 1218 (1994), *appeal denied,* 539 Pa. 693, 653 A.2d 1232 (1994).[3] Historically, a Section 402(a) strict products liability action only created liability for injuries proximately caused by a defect where the defect also caused the accident. *Barris v. Bob's Drag Chutes & Safety Equipment, Inc.,* 685 F.2d 94, 99 (3rd Cir.1982). However, the crashworthiness doctrine extends the liability of manufacturers and sellers to "situations in which the defect did not cause the accident or initial impact, but rather increased the severity of the injury over that which would have occurred absent the design defect." *Kupetz,* 644 A.2d at 1218 (citing *Mills v. Ford Motor Co.,* 142 F.R.D. 271 (M.D.Pa.1990)). Therefore, in order for a manufacturer to avoid liability, it must design and manufacture a product that is "reasonably crashworthy", or alternatively stated, the manufacturer must contemplate accidents among the intended uses of its product. *Kupetz,* 644 A.2d at 1218.

■ ¶ 12 To prevail on a crashworthiness or second collision theory in a products liability action under Section 402(a), a plaintiff must prove three elements. First, the plaintiff must demonstrate that the design of the vehicle was defective and that when the design was made, an alternative, safer, practicable design existed. *Kupetz,* 644 A.2d at 1218 (citing *Craigie v.*

3. We note that the court in *Kupetz* was the first court of this Commonwealth to explicitly state that the crashworthiness/second collision doctrine is a permissible theory of recovery in Pennsylvania. *Kupetz,* 644 A.2d at 1219. In *Kupetz,* a widow brought a products liability action against the manufacturer of a bulldozer/crawler, pursuant to the crashworthiness doctrine, when the machine crushed her husband during a rollover accident. *Id.* at 1215. At trial, the widow argued that a rollover protection system would have saved her husband's life. *Id.* Despite this assertion, the jury returned a verdict in favor of the manufacturer upon its determination that her husband assumed the risk of his fatal injuries by operating the machine on a steep slope. *Id.* On appeal, after recognizing the viability of the crashworthiness doctrine in Pennsylvania, the *Kupetz* court also held that the husband's assumption of the risk could operate as a complete bar to recovery. *Id.* at 1221.

*General Motors Corp.,* 740 F.Supp. 353 (E.D.Pa.1990)). Second, the plaintiff must show what injuries, if any, the plaintiff would have received had the alternative safer design been used. *Id.* Third, the plaintiff must prove what injuries were attributable to the defective design. *Id.*[4]

¶ 13 To determine whether the trial court's failure to instruct on the crashworthiness doctrine was erroneous, we must first determine whether the facts of this case arguably support a recovery under the crashworthiness doctrine. As stated *supra,* an application of the crashworthiness doctrine is required where the alleged defect did not cause the accident or initial impact, but merely serves to increase the severity of the injury. *Kupetz,* 644 A.2d at 1218.

¶ 14 Upon our review of the facts of this case, we find that Appellees consistently introduced evidence indicating the absence of a door did not cause the initial impact. For example, Mr. Colville testified that the accident occurred when the steering and braking mechanism of the forklift failed and he lost control.[5] N.T. Jury Trial, 3/8/99, at 90–1. Additionally, Appellees' expert witness, John Sevart, testified that the forklift would have collided with the delivery truck even if a door were present. N.T. Jury Trial, 3/9/99, at 183.

¶ 15 Additionally, Appellees presented evidence that the defect served to increase the injury Mr. Colville suffered during the accident. Specifically, John Sevart testified that the installation of a proper structural door would have prevented all of the injuries sustained in the collision. *Id.* As the crashworthiness doctrine was created to extend liability to manufacturers and sellers of defective products in a situation of this kind, we find that a crashworthiness instruction was warranted. *See Kupetz, supra* (holding that the crashworthiness doctrine extends liability to "situations in which the defect did not cause the accident ..., but rather increased the severity of the injury over that which would have occurred absent the design defect").

¶ 16 Appellees argue, however, that the crashworthiness doctrine is not applicable in the instant case because Mr. Colville was not involved in a "second collision." Rather, Appellants maintain that Mr. Colville sustained his injury during the first and only collision (i.e. when the forklift slammed into the delivery truck). Upon review, we disagree with Appellees' narrow interpretation of the "second collision"/crashworthiness doctrine.

¶ 17 In our Commonwealth, crashworthiness "means the protection that a motor vehicle affords its passenger against personal injury or death as a result of a motor vehicle accident." *Kupetz,* 644 A.2d at 1218 (citing *Jeng v. Witters,* 452 F.Supp. 1349, 1355 (M.D.Pa.1978)). Additionally, a second collision, "as used in the definition of a crashworthiness of a motor vehicle in products liability cases, generally refers to the collision of the passenger with the interior part of the vehicle after the initial impact or collision." *Id.* We note, however, that other courts have ex-

---

4. We note that a panel of our Court recently re-allocated the burden of proof under the second and third elements of the crashworthiness doctrine. *See Stecher v. Ford Motor Company,* 779 A.2d 491 (Pa.Super.2001), *appeal granted,* 568 Pa. 619, 792 A.2d 1254 (Pa.2001). However, the panel in *Stecher* held that this re-allocation only applied in cases where plaintiff suffers an indivisible in-jury. *Id.* As we are not confronted with an indivisible injury in the instant case, we find that our decision in *Stecher* has no bearing on this appeal.

5. We note that this case was not tried on the theory that the steering or braking mechanism of the forklift were defective.

tended this "second collision" principle to include situations where the passenger is ejected from the vehicle and impacts with the highway. *Id.* The principle behind the second collision concept is that, "because of the way the vehicle has been manufactured, a person's injuries have been aggravated unnecessarily." *Id.* (citing *Jeng,* 452 F.Supp. at 1355).

▪ ¶ 18 In *Kupetz,* as stated *infra,* a panel of our Court recognized the viability of the crashworthiness doctrine in the context of a rollover accident involving a bulldozer/crawler. *Id.,* 644 A.2d at 1219. Upon our review of *Kupetz,* we note that the case was pursued under a crashworthiness theory despite the fact that the decedent was fatally injured during the initial impact or accident and not during a "second collision". Simply stated, the bulldozer/crawler in *Kupetz* rolled over and impacted the ground at the same moment, and during the same motion, when it crushed its operator under its own weight. In light of the factual scenario in *Kupetz,* we must conclude that the critical focus of a crashworthiness/ second collision case is not whether an independent second collision occurs or whether the injured strikes a particular surface (i.e. highway, interior of vehicle, ground etc.) during a "second collision." Rather, consistent with the principle underlying the doctrine, the term "second collision" must be interpreted to encompass any situation where unnecessary or "secondary" injuries occur as the result of a defective product's failure to protect the passenger. *Id.; see also Volkswagen of America v. Marinelli,* 628 So.2d 378, 385 (Ala.1993) (focus in crashworthiness cases is on the "capacity of automobile to respond to a foreseeable hazardous situation without causing or enhancing injury" and not on whether a *per se* second collision occurred).

¶ 19 In the instant case, we recognize that Mr. Colville was not involved in an independent "second collision." Mr. Colville sustained his injuries when his foot was simultaneously crushed during the initial impact with the truck. Nonetheless, we recognize that Appellees pursued their strict products liability claim under the theory that an effectively designed door would have prevented all of his injuries during the crash. In light of this theory of the case, and the principle underlying the "second collision" doctrine, *Kupetz, supra,* we find that a jury should have been instructed on the elements of crashworthiness. *See also Habecker v. Clark Equipment Co.,* 36 F.3d 278 (3rd Cir.1994) (case properly brought under crashworthiness doctrine where forklift rolled over and crushed operator under its own weight); *Marshall v. Clark Equipment Co.,* 680 N.E.2d 1102 (Ind.Ct.App.1997) (case properly pursued under crashworthiness theory where operator of a forklift crushed his foot between a post and the base of the forklift).

▪ ¶ 20 In their brief, Appellees also maintain that a crashworthiness instruction was unwarranted because Mr. Colville did not sustain an "enhanced injury." Essentially, Appellees maintain that, in order for a jury to find an "enhanced injury," the evidence must first demonstrate that some injury would have occurred regardless of the defect. We disagree.

¶ 21 In *Kupetz,* we stated the three elements necessary to succeed on a crashworthiness claim. The second of these elements required the plaintiff to demonstrate "what injuries, *if any,* the plaintiff would have received had the alternative safer design been used." (Emphasis added). In light of this language, it is clear that our Court sought to include those circumstances, as in the instant case, where an individual would not have re-

ceived any injuries in the absence of a defect. *See also Kolesar v. Navistar Int'l Transp. Corp.*, 815 F.Supp. 818, 819 (M.D.Pa.1992), *affirmed* 995 F.2d 217 (3rd Cir.1993) (permitting plaintiff to proceed on a crashworthiness theory where the plaintiff would have walked away uninjured absent the defect). Therefore, we find that Appellees' interpretation of the term "enhanced injury" is clearly erroneous.

■ ¶ 22 Furthermore, Appellees argue that the trial court did not err in failing to charge the jury on crashworthiness because Appellees did not advance a crashworthiness theory at trial. This assertion is unsupported by the record. The record is replete with Appellees' own references to this doctrine and to their accompanying burden of proof in a crashworthiness case. For example, in their opening statement, Appellees' counsel made the following remarks to the jury:

> The second theory, which is also a type of products liability, is what is called crashworthiness, and under the crashworthiness theory, the crashworthiness doctrine provides a manufacturer is liable in a situation in which the defect did not cause the accident or initial impact but rather increased the severity of the injury over that which would have occurred absent the design defect. We have to prove the crashworthiness.
>
> There was an alternative safer design. How will that get proved? That will get proved because when Mr. Colville was injured in October of 1994, Crown had approximately 300 forklifts out being used which had doors to protect the operator and the operator compartment from the left leg and left foot coming out.... We will show the injuries in this case, if any, what they would be from an alternative safer design. They would be non-existent. We wouldn't be here.

> You would be home with your jobs or with your families. We will show you enhanced injuries from the defective design and you will see that in photographs of Mr. Colville's foot.

N.T. Jury Trial, 3/8/99, at 45–6. Furthermore, during their case-in-chief, Appellees asked their expert witness whether a door would constitute a safer alternative design and whether Mr. Colville's injuries were enhanced by the alleged design defect. When Appellants' counsel objected to the expert's testimony regarding enhanced injury, Appellees' counsel responded that enhanced injury was "one of the elements for me to prove the crashworthiness claim." N.T. Jury Trial, 3/9/99, at 181. We also note that Appellees submitted three proposed jury instructions related to crashworthiness prior to trial. In light of these facts, we find no merit in Appellees' contention that the instant case was not tried as a crashworthiness case.

■ ¶ 23 Next, Appellees contend that a jury instruction on crashworthiness was unnecessary since they chose to pursue their case under the traditional Section 402(a) strict liability theory (i.e. that the defect caused the initial accident). In making this argument, Appellees essentially maintain that crashworthiness is an additional theory of recovery that a plaintiff may elect to pursue. Upon review, however, we disagree.

¶ 24 As stated *supra,* one may pursue a classic, Section 402(a) products liability action when a defect proximately causes both the accident and the injuries that are sustained during the accident. *See Barris,* 685 F.2d 94 at 99. While we recognize that a crashworthiness claim is characterized as a subset of a Section 402(a) claim, it is clear that the crashworthiness doctrine is uniquely tailored to address those situations where the defective product did not cause the accident but served to in-

crease the injury. *Kupetz,* 644 A.2d at 1218. In the instant case, our review of the evidence indicates that the absence of a door to the operator's compartment did not cause Mr. Colville to collide with the delivery truck. Therefore, an instruction on crashworthiness was required.

¶ 25 Appellees, however, cite *Barris,* 685 F.2d at 100, as persuasive authority for the proposition that a plaintiff may solely proceed on a Section 402(a) strict liability claim where the defect did not cause the initial accident. In *Barris,* the driver of a sprint racing car was killed when his car collided with the left rear tire of a second sprint car and flipped over. *Id.* at 97. The driver's widow brought an action against the manufacturer of the car's shoulder harness alleging that a more effectively designed harness would have protected her husband during the crash. *Id.* The widow failed to bring an action against the manufacturer of the sprint car itself. *Id.* At trial, the widow pursued her case under a theory of crashworthiness, and at the close of her evidence, the trial court directed a verdict in favor of the harness manufacturer. *Id.* The trial court concluded that the widow failed to demonstrate that her husband's death would have been prevented by a better shoulder harness. *Id.* On appeal, the Third Circuit panel determined that the district court erred when it determined that the crashworthiness standard applied. *Id.* at 100. Rather, the panel held that the case presented a classic Section 402(a) strict liability case "where an allegedly defective product, a shoulder harness, failed during the car's flip, causing decedent to come loose in the race car and suffer fatal injuries." *Id.* Upon this basis, the panel vacated the district court's order granting a directed verdict against the harness manufacturer and remanded for a new trial. *Id.* at 102.

¶ 26 Upon our review, we find the Third Circuit's decision in *Barris* distinguishable from the instant case. Although the facts in *Barris* indicate that the allegedly defective shoulder harness did not cause the accident itself (i.e. the collision between the sprint cars), the Third Circuit did not rely upon this factor when it determined that crashworthiness was inapplicable. Instead, the panel stated that it refused to extend the crashworthiness doctrine to cases where the plaintiff only sues the manufacturer of a component part, rather than the manufacturer of the motor vehicle itself. *Id.* at 100, n. 8.

¶ 27 As *Barris* only discussed the applicability of the crashworthiness doctrine in the context of a suit against a component manufacturer, we do not find the *Barris* case persuasive in the context of a suit against the manufacturer of the forklift. Thus, we conclude that Appellees could not simply "elect" to try their instant case under a Section 402(a) theory of liability.

¶ 28 Upon our determination that the trial court erroneously failed to instruct the jury on crashworthiness, we must now determine whether this error might have prejudiced Appellant, thereby necessitating a new trial. When reviewing a trial court's denial of a motion for a new trial, we will not overturn the trial court's determination unless the trial court grossly abused its discretion or committed an error of law that controlled the outcome of the case. *Turney Media Fuel, Inc. v. Toll Bros., Inc.,* 725 A.2d 836, 841 (Pa.Super.1999). It is well settled that "a trial court abuses its discretion by rendering a judgment that is manifestly unreasonable, arbitrary or capricious, or has failed to apply the law, or was motivated by partiality, prejudice bias or ill-will." *Ettinger,* 799 A.2d at 106. Moreover, in determining whether to grant a motion for a new trial based upon the adequacy or sufficien-

cy of the jury charge, we may only grant a new trial if the charge was erroneous and "if the jury charge might have prejudiced the appellant." *Ottavio,* 617 A.2d at 1301. Moreover, "[a] new trial will be granted even though the extent to which the appellant has been prejudiced is unascertainable." *Id.*

¶ 29 In the instant case, the jury was instructed on the elements of a Section 402(A) strict products liability claim without any reference to the crashworthiness standard. *See Kupetz, supra.* As a result of this error, the court failed to give the jury any guidance on how to determine whether the door constituted a safer alternative design or how to utilize all of the expert testimony regarding this issue. Since Appellants primarily based their defense on the assertion that a door would not constitute a safer alternative design, we find that Appellants must have been prejudiced by this omission.

¶ 30 We find the federal district court's decision in *Olsen v. U.S.,* 521 F.Supp. 59 (E.D.Pa.1981) distinguishable from the instant case. In *Olsen,* the plaintiff brought an action against the Ford Motor Company when he sustained a head injury during a rollover accident. *Id.* at 62. At the close of trial, the court only instructed the jury under Section 402(a) despite the fact that a defective A-pillar in the car was not the cause of the rollover. *Id.* After its deliberations, the jury returned a verdict for the defense. *Id.* On appeal, the court determined that the plaintiff suffered no prejudice from the trial court's failure to instruct on the crashworthiness doctrine as long as the jury received an adequate instruction on the elements of a Section 402(a) strict liability claim and had no difficulty applying these elements. *Id.* at 65. Presumably, the *Olsen* court concluded that plaintiff's failure to establish a Section 402(a) claim indicated that the plaintiff would have likewise failed on a crashworthiness claim. As such, the trial court refused to grant a new trial on this issue.

¶ 31 Unlike the facts in *Olsen,* however, we note that the jury, in the case *sub judice,* returned a verdict in plaintiffs' (Appellees') favor at the conclusion of the trial. The jury returned this verdict upon its determination that Appellants' proved each of the elements under a Section 402(a) claim by a preponderance of the evidence. Despite Appellees' success on the Section 402(a) claim, we note that the crashworthiness doctrine "imposes on the plaintiff more rigorous proof requirements than the typical Section 402(a) claim." *Barris,* 685 F.2d at 99. As the trial court did not hold Appellees to this burden, Appellants have certainly suffered prejudice. Thus, we must vacate the judgment of the trial court and remand for a new trial.

¶ 32 Judgment vacated and case remanded for a new trial. Jurisdiction relinquished.