J. A21015/16

AMERICAN HONDA MOTOR CO., INC., : IN THE SUPERIOR COURT OF
          Appellant        :        PENNSYLVANIA
 :
 :
 :
 :
           v.          :
 :
CARLOS MARTINEZ AND ROSITA DE : 
LOS SANTOS DE MARTINEZ, H/W :    No. 445 EDA 2015

Appeal from the Judgment Entered January 21, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 111203763

BEFORE: BENDER, P.J.E., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY DUBOW, J.: **FILED APRIL 19, 2017**

This appeal of a Judgment in a products liability case has a unique and uncommon procedural posture. After the jury returned a verdict in favor of Appellees, and against Appellant, but before the trial court ruled on Honda's Post-Trial Motion, the Pennsylvania Supreme Court issued its decision in ***Tincher v. Omega Flex, Inc.***, 104 A.3d 328 (Pa. 2014), which overruled a dispositive products liability case. Therefore, the issues in the Post-Trial Motion and on appeal deal with whether the holding in ***Tincher*** negatively impacted the trial court's jury instructions and evidentiary rulings. We find that the trial court, even in light of ***Tincher***, properly instructed the jury and precluded certain evidence. We, therefore, affirm.

More specifically, the Appellant in this appeal is American Honda Motor Co., Inc. ("Honda"), which appeals from the judgment entered in favor of Carlos Martinez and Rosita de los Santos de Martinez ("Appellees") and

against Honda for $55,325,714. The trial court aptly set forth the facts and

procedural history as follows:

> On May 1, 2010, [Appellee] Carlos Martinez, was driving a 1999 Acura Integra, manufactured by Honda, when he lost control of the vehicle. His car left the roadway and rolled over twice. He sustained serious injuries from the accident that rendered him a quadriplegic. [Appellees] timely brought suit against Honda for damages as a result of the accident.[1] In their claim against Honda, [Appellees] alleged the seatbelt in [Appellee] Carlos Martinez's vehicle was defectively designed.
>
> The matter was tried before a jury from June 17, 2014 to June 26, 2014. The jury returned a verdict against Honda, finding Honda negligent under two independent theories. First, the jury found that the design of the seatbelt in Carlos Martinez's car was defective and there was an alternative, safer, practicable design. The jury also determined the subject vehicle was defective because of Honda's failure to warn. The jury also found both the defective design and Honda's failure to warn were factual causes of [Appellee] Carlos Martinez's injuries. As a result, the jury awarded [Appellees] $14,605,393.00 in future medical expenses, $720,321.00 in past and future lost earnings and earnings capacity, $25 million in past and future non-economic damages, and $15 in loss of consortium, totaling an award of $55,325,714.00.

Trial Ct. Op., 9/17/15, at 1-2.

On July 7, 2014, Honda filed a timely Post-Trial Motion. While the Post-

Trial Motion was pending, our Supreme Court issued its decision in ***Tincher***

---

[1] In their Complaint, Appellees also raised claims against Bowser Automotive, Inc., and Takata Corporation. Appellees dismissed their claims against Bowser Automotive, Inc. by Stipulation entered on January 14, 2014. In response to a Rule to Show Cause issued upon the parties by this Court on January 24, 2017, the parties jointly represent that Appellees never served their Complaint on Takata Corporation and Takata Corporation never entered an appearance in this case.

*supra*. In *Tincher*, the Supreme Court overruled the long-standing decision

in *Azzarello v. Black Bros. Co.*, 391 A.2d 1020 (Pa. 1978), by holding that

in a design defect case, it should be the jury, and not the trial court, that

determines the threshold question of whether a product is "unreasonably

dangerous." *Tincher*, *supra* at 406, (citing *Azzarello*, *supra* at 1025-27).

The trial court heard argument on the Post-Trial Motion that addressed

the issue of the impact of *Tincher* on the trial court's evidentiary rulings and

jury instructions.[2] On January 21, 2015, the trial court denied Honda's Post-

Trial Motion, and entered Judgment in favor of Appellees in accordance with

the jury's allocation of damages. Honda timely appealed. Honda and the

trial court complied with Pa.R.A.P. 1925.

Honda raises the following eight issues on appeal:

> 1. Whether the Supreme Court's decision in *Tincher* [*v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014)] requires a new trial because the trial court: (i) failed to instruct the jury that [Appellees] had the burden of proving that the product was "unreasonably dangerous," (ii) charged the jury with *Azzarello*[ *v. Black Bros. Co.*, 391 A.2d 1020 (Pa. 1978)]'s vague and confusing "guarantor"/"any element" instruction which *Tincher* rejected, (iii) barred Honda from introducing evidence of applicable regulatory and industry standards, and (iv) denied *Tincher*'s applicability to warning claims.

---

[2] Because the trial court had not ruled on the Post-Trial Motion when the Supreme Court issued its decision in *Tincher*, *Tincher* applies retroactively to the issues raised in Honda's Post-Trial Motion. *See Passarello v. Grumbine*, 87 A.3d 285, 307-08 (Pa. 2014).

2. Whether the trial court's design defect jury instruction was erroneous for omitting the second crashworthiness element and misstating the third element.

3. Whether the trial court erroneously instructed the jury on [Appellees'] warning-defect claim by imposing an irrebuttable heeding presumption.

4. Whether Honda is entitled to a [J]udgment *n.o.v.* on the design-defect claim because the only alternative design [Appellees] presented to the jury was unlawful under federal regulations.

5. Whether [Appellees'] unlawful design-defect claim is preempted by federal motor vehicle regulations.

6. Whether Honda is entitled to a [J]udgment *n.o.v.* on the warning-defect claim because [Appellees] offered no causation evidence that [Appellee Carlos] Martinez would have heeded any additional warning.

7. Whether the excessive damages award violates Pennsylvania law and Due Process.

8. Whether refusal to transfer venue warrants that any new trial occur in [Appellees'] county of residence.

Honda's Brief at 4-5.

## **Standard of Review**

This Court will only reverse a trial court's denial of Judgment N.O.V. if the trial court committed an error of law that controlled the case or, if the court, after reviewing the evidence in the light most favorable to the verdict-winner and giving the verdict-winner the benefit of all inferences, abused its discretion:

> Appellate review of a denial of JNOV is quite narrow. We may reverse only in the event the trial court abused its discretion or committed an error of law that controlled the

- 4 -

> outcome of the case. Abuse of discretion occurs if the trial court renders a judgment that is manifestly unreasonable, arbitrary or capricious; that fails to apply the law; or that is motivated by partiality, prejudice, bias or ill will. When reviewing an appeal from the denial of a request for JNOV, the appellate court must view the evidence in the light most favorable to the verdict-winner and give him or her the benefit of every reasonable inference arising therefrom while rejecting all unfavorable testimony and inferences. . . . Thus, the grant of JNOV should only be entered in a clear case and any doubts must be resolved in favor of the verdict-winner[.]

***Sears, Roebuck & Co. v. 69th Street Retail Mall, L.P.***, 126 A.3d 959, 967 (Pa. Super. 2015) (citations, quotation marks, and brackets omitted).

Applying this standard, we find that the trial court did not err in denying Honda's Motion for Judgment N.O.V.

**Trial Court's Jury Instructions in Light of *Tincher***

In large part, Honda's first three issues challenge the trial court's jury instructions.[3] In reviewing the jury instructions, we must determine whether there was an omission from the charge that amounts to a fundamental error:

> To determine whether the trial court abused its discretion or offered an inaccurate statement of law controlling the outcome of the case. A jury charge is adequate unless the issues are not made clear, the jury was misled by the instructions, or there was an omission from the charge amounting to a fundamental error. **This Court will afford a new trial if an erroneous jury instruction amounted to a fundamental error or the record is**

---

[3] This is true with the notable exception of sub-issue three of issue one, which raises a challenge to an evidentiary ruling.
We will address this issue in the next section of this Memorandum.

> **insufficient to determine whether the error affected the verdict.**

*Tincher*, 104 A.3d at 351 (emphasis added). Moreover, the trial court has wide discretion in charging a jury and a charge is considered adequate unless the jury instruction palpably misled the jury or there was an omission that amounted to a fundamental error:

> A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear[,] or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the [a]ppellant was prejudiced by that refusal.

*Amato v. Bell & Gossett*, 116 A.3d 607, 621 (Pa. Super. 2015), *appeal granted*, 130 A.3d 1283 (Pa. 2016) (emphasis added).

Honda raises four challenges to the jury charge in light of *Tincher*. The first three deal with the charge for the design defect claim and the final challenge deals with the charge for the failure to warn claim. *See* Honda's Brief at 19-20, 22-27. We first address the challenges to the jury charge that address the design defect claim.

Honda argues that it is entitled to a new trial because, contrary to the holding in *Tincher*, it was the judge, and not the jury, who made the

threshold determination of whether Appellees' 1999 Integra's seat belt restraint was "unreasonably dangerous."

It is well established that a plaintiff, as a threshold matter, must establish that a product is "unreasonably dangerous" by either a risk utility analysis or consumer expectation analysis. ***Tincher***, ***supra*** at 426-27. In this case, the trial court, in fact, did engage in a risk utility analysis before sending the case to the jury and concluded that Appellees met their burden.

Honda, in particular, argues that since it was the judge, and not the jury, who engaged in a risk utility analysis, Appellant is automatically entitled to a new trial. However, our analysis does not end with only evaluating whether it was the judge or the jury who engaged in a risk utility analysis. Rather, we must look to the jury instructions and determine whether a portion of the jury charge included a risk utility analysis.

When conducting a risk utility analysis, a jury must determine whether "a reasonable person would conclude that the probability and seriousness of harm caused by the product outweigh the burden or costs of taking precautions." ***Id.*** at 389.

In this case, one of theories that Appellees advanced was a crashworthiness theory, which required, *inter alia*, proof that there was an **alternative, safer, practicable** design for the seat belt restraint system. ***See Gaudio v. Ford Motor Co.***, 976 A.2d 524, 532 (Pa. Super. 2009).

Although the language in this charge—that there was an "alternative, safer, practicable design" for the seat belt restraint system—is not precisely the language required for the risk utility analysis, we conclude that the charge is not fundamentally flawed. The portion of the charge to determine the "practicability of an alternate design" inherently requires the jury to balance factors such as the cost of implementing the design against the relative safety of the alternate design. Accordingly, the jury could not have reached a verdict in the case without conducting a risk utility analysis.

Therefore, we find that the trial court did not abuse its discretion in denying Honda's request for a new trial. The jury charge here was adequate because the court made it clear to the jury that it was the arbiter of whether the 1999 Integra's seat belt restraint system was "unreasonably dangerous," and the absence of explicit "risk-utility" language from the court's instruction did not amount to a fundamental error.

In its second sub-issue, Honda claims it is entitled to a new trial because the court erroneously charged the jury with *Azzarello*'s vague and confusing "guarantor"/"any element" instruction, which *Tincher* rejected. Following our review of *Tincher*, we disagree with Honda that the court's instruction contained a fundamental error in this regard. Although *Tincher* overruled *Azzarello*, the holding in *Tincher* does not require that the trial court remove the "guarantor" language from a jury instruction. Therefore, Honda is not entitled to relief on this claim.

In its third sub-issue, Honda avers that it is entitled to a new trial because the court erred in preventing Honda from introducing evidence of its compliance with applicable federal regulatory and industry standards. This claim is meritless.

We review a trial court's ruling on the admission of evidence for an abuse of discretion or misapplication of the law. *Gaudio*, 976 A.2d at 535.

Our Supreme Court has held that evidence of applicable federal regulatory and industry standards "'should be excluded because it tends to mislead the jury's attention from their proper inquiry,' namely 'the quality or design of the product in question.'" *Id.* at 543 (quoting *Lewis v. Coffing Hoist Division, Duff-Norton Co., Inc.*, 528 A.2d 590, 594 (Pa. 1987)). *Tincher* does not, nor did it purport to, affect the applicability of the rulings in *Gaudio* or *Lewis*. Based upon precedent that remains unchanged, the trial court determined that the proposed evidence was inadmissible. We agree.

With respect to Honda's fourth, and final, sub-issue pertaining to *Tincher*'s applicability to failure to warn claims, we reiterate that our Supreme Court decided *Tincher* in the context of a design defect strict liability case. Although Honda correctly notes that in *Amato v. Bell & Gossett*, 116 A.3d 607, 621 (Pa. Super. 2015), this Court extended the holding in *Tincher* to warning defect strict liability cases, Honda is not entitled to relief on this claim.

In **Amato**, the defendants sought, and the trial court denied, a failure to warn jury instruction incorporating the negligence concept of reasonableness. **Amato**, 116 A.3d at 620. In considering the defendant's claim of trial court error, this Court recognized that the **Tincher** Court itself acknowledged that its "decision is limited to the context of a 'design defect' claim[.]" **Tincher**, 104 A.3d at 384 n.21. However, we concluded that, because **Tincher** returned reasonableness "considerations to the purview of the jury as a question of fact in cases concerning strict liability[,]" **Tincher** is applicable to failure to warn strict liability actions. **Amato**, 116 A.3d at 620.

After concluding that the holding in **Tincher** applied to design defect and failure to warn cases alike, however, the **Amato** court found that the trial court's failure to warn instruction did not prejudice the defendant because the defendant's proposed instruction was not justified by its theory of the case or the evidence it presented at trial. **Id.** at 622-23. **Amato** did not shed any light on how a court should word a failure to warn jury instruction to comply with **Tincher**.

It bears noting that the Pennsylvania Supreme Court recently granted the **Amato** plaintiffs' Petition for Allowance of Appeal for the limited purpose of considering whether, under **Tincher**, a defendant advancing a strict-liability claim based on a failure to warn theory has the right to have a jury determine whether its product was unreasonably dangerous. **See Amato v.**

*Bell & Gossett*, 130 A.3d 1283 (Pa. 2016). Thus, the applicability of *Tincher* to warning defect claims remains unsettled.

In the instant matter, however, we need not consider whether the trial court's instruction to the jury on Appellees' failure to warn theory of liability complied with *Tincher*, as any such failure would amount to harmless error. Because the jury returned a verdict against Honda on both of Appellees' theories of liability, Honda's argument that it is entitled to a new trial fails as Honda cannot demonstrate that the court's instruction prejudiced it or that the allegedly erroneous instruction was responsible for the verdict. *See Chanthavong v. Tran*, 682 A.2d 334, 340 (Pa. Super. 1996) (holding that, "[t]o constitute reversible error, a jury instruction must not only be erroneous, but must also be harmful to the complaining party.") (citations omitted)).

**Crashworthiness**

In its next issue, Honda claims that it is entitled to a new trial because the trial court's design defect jury instruction was erroneous. Honda's Brief at 29. Relying on *Colville v. Crown Equipment Corp.*, 809 A.2d 916 (Pa. Super. 2002), Honda avers that, because Appellees pursued a crashworthiness cause of action against it,[4] the trial court must explicitly

---

[4] Appellees do not dispute that they raised a crashworthiness claim against Honda. We note that, the "application of the crashworthiness doctrine is required where the alleged defect did not cause the accident or initial

instruct the jury on each of the three elements of crashworthiness. ***See*** Honda's Brief at 31 (citing ***Colville supra***). Honda claims that the court adequately charged the jury on element one of the crashworthiness burden of proof, but failed to charge on element two, and incorrectly charged on element three. ***Id.***

"[T]he crashworthiness doctrine extends the liability of manufacturers and sellers to situations in which the defect did not cause the accident or initial impact, but rather increased the severity of the injury over that which would have occurred absent the design defect."[5] ***Colville***, 809 A.2d at 922. In a crashworthiness case, a plaintiff bears the burden of proving three elements. ***Id.*** at 922; ***see also*** Rest. 2d Torts § 402A. "First, the plaintiff must demonstrate that the design of the vehicle was defective and that when the design was made, an alternative, safer, practicable design existed." ***Colville***, ***supra*** at 922 (citations omitted). "Second, the plaintiff must show what injuries, if any, the plaintiff would have received had the alternative safer design been used." ***Id.*** at 923 (citation omitted). "Third,

---

impact, but merely serves to increase the severity of the injury." ***Colville***, ***supra*** at 933 (citation omitted).

[5] It is for this reason that the crashworthiness doctrine is also sometimes known as the second collision doctrine. ***Colville***, ***supra*** at 922. "[A] second collision, as used in the definition of a crashworthiness of a motor vehicle in products liability cases, generally refers to the collision of the passenger with the interior part of the vehicle after the initial impact or collision." ***Id.*** at 923 (citation and quotation omitted).

the plaintiff must prove what injuries were attributable to the defective design." *Id.*

Here, the trial court instructed the jury as follows:

> If you find that the product at the time it left [Honda's] control lacked any element necessary to make it safe for its intended use or contained any condition that made it unsafe for its intended use and there was an alternative, safer, practicable design, then the product was defective, and [Honda] is liable for all harm caused by the defect.

N.T., 6/26/14 (afternoon session), at 23.

The court also instructed the jury that,

> [i]n order for [Appellees] to recover in this case, the defective condition must have been a factual cause of harm attributable solely to the impact that occurred when the roof of the car hit the ground.
>
> [Appellees are] required to prove only that the defective condition was a factual cause of those damages that occurred when the roof of the car hit the ground. [Appellees are] not required to prove that the defective condition caused the tire to blow out or the rollover itself.

N.T., 6/26/14 (afternoon session), at 25-26.

Our review of this instruction reveals that, when considered in its totality, the court's instruction to the jury on the crashworthiness doctrine was adequate.

Moreover, we find Honda's reliance on *Colville* unpersuasive. In *Colville*, this Court remanded the case to the trial court after concluding that the court failed to provide the jury with any instruction whatsoever on crashworthiness. *Colville*, *supra* at 926. Contrary to Honda's averments,

*Colville* did not direct the court to instruct the jury on the three elements of a crashworthiness defect claim with any particular level of specificity. Here, as set forth *supra*, the trial court made it clear to the jury that it was to focus its inquiry into Honda's liability on the "second collision," *i.e.*, the injury Carlos Martinez suffered when the roof of his car hit the ground.

Accordingly, we find that our decisional law does not prescribe a jury instruction meeting the level of specificity demanded by Honda, and that the court's instruction to the jury on crashworthiness adequately encapsulated the elements of the doctrine. Honda is not entitled to relief on this claim.

## The Heeding Presumption Instruction

In its third issue, Honda claims it is entitled to a new trial because the trial court erroneously instructed the jury on Appellees' warning defect claim by imposing an irrebuttable heeding presumption. Honda's Brief at 42, 45. Honda argues that the court's instruction was improper because the Pennsylvania Suggested Standard Civil Jury Instruction ("Pa.SSJI (Civ)") § 16.50 is incomplete and obsolete, and because it charged the jury that the heeding presumption was not rebuttable. *Id.* at 44-45.

With respect to this claim, the trial court explained its decision to instruct the jury pursuant to the Pa. SSJI (Civ) § 16.50 as follows:

> Based upon the evidence introduced in this case, this [c]ourt instructed the jury pursuant to Pa. SSJI (Civ) § 16.50, which instructed the jury that they must presume that if there were adequate warnings[, Carlos Martinez] would have followed them. Honda claims error because the [c]ourt did not charge pursuant to Pa.SSJI (Civ) §

16.60. That instruction, as the subcommittee noted, is appropriate when the defendant has presented evidence rebutting the heeding presumption. The [c]ourt did not give the requested instruction because Honda presented no evidence to rebut the presumption. The only evidence on this issue was Mr. Martinez's testimony that had a warning been given[,] he would have heeded it by not buying the car.

Trial Ct. Op., 9/17/15, at 10.

Our review of the relevant jury instruction reveals that, contrary to Honda's assertion, the court did not, in a vacuum, instruct the jury that it "must presume that Mr. Martinez would have followed any adequate warning." Honda's Brief at 42. Rather, as explained by the court ***supra***, given Appellees' evidence, and Honda's lack of rebuttal evidence, the court instructed the jury that:

Even a perfectly made and designed product may be defective if not accompanied by proper warnings and instructions concerning its use. A manufacturer must give the user or consumer any warnings and instructions of the possible risks of using the product that may be required or that are created by the inherent limitations in the safety of such use.

If you find that such warnings or instructions were not given, the defendant is liable for all harm caused to the plaintiff by the failure to warn.

If you find instead that there were warnings or instructions required to make this product non-defective which were not adequately provided by the defendant, then you may not find for the defendant based on a determination that, even if there had been adequate warnings or instructions, the plaintiff would not have read or heeded them.

> Instead, the law presumes, and you must presume, that **if** there had been adequate warnings or instructions, the plaintiff would have followed them.

N.T., 6/26/14 (afternoon session), at 23-25 (emphasis added).

Here, Mr. Martinez testified, over Honda's objection, that, had there been warnings about the car not being able to protect him in a rollover, he would not have bought the car. Honda did not introduce any evidence rebutting this testimony. We find, therefore, that, in the absence of any evidence rebutting Mr. Martinez's testimony, the trial court's heeding instruction was appropriate. Accordingly, no relief is due.

**Alternative Design Evidence**

In its fourth issue, Honda claims that it is entitled to a Judgment N.O.V. on Appellees' design-defect claim because the only alternative seat belt design Appellees presented to the jury was infeasible because it was unlawful under federal regulations. Honda's Brief at 35. This issue implicates the weight the jury gave to the evidence presented by the parties. Our standard of review of weight of the evidence claims is well-settled:

> appellate review of a weight claim is a review of the trial court's exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the

> weight of the evidence and that a new trial should be granted in the interest of justice.

**Phillips v. Lock**, 86 A.3d 906, 919 (Pa. Super. 2014) (citation omitted). In addition,

> The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court may award a judgment notwithstanding the verdict or a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. When a fact finder's verdict is so opposed to the demonstrative facts that looking at the verdict, the mind stands baffled, the intellect searches in vain for cause and effect, and reason rebels against the bizarre and erratic conclusion, it can be said that the verdict is shocking.

**Brown v. Trinidad**, 111 A.3d 765, 770 (Pa. Super. 2015) (citations and quotation marks omitted).

As discussed **supra**, in order to prevail on a crashworthiness theory of liability, a plaintiff must prove, *inter alia*, "that the design of the vehicle was defective, and that, at the time of design an alternative, safer, and practicable design existed that could have been incorporated instead." **Parr v. Ford Motor Co.**, 109 A.3d 682, 689 (Pa. Super 2014), *allocatur denied*, 123 A.3d 331 (Pa. 2015); **see also Colville**, 809 A.2d at 922.

Appellees' presented evidence at trial of an alternative practicable seat belt design (the "Sicher Design") that it claimed was in use by Chrysler in its

Sebring model during the period relevant in this case. Appellees argue that the use of the Sicher Design in another vehicle established its lawfulness.

Honda, however, argues that the Sicher Design incorporated an element that would have been illegal for Honda to design and sell, and that an illegal alternative design is no alternative at all. *Id.* at 37. Honda avers that it proffered evidence that Mr. Sicher, Appellees' expert, never tested his proposed design without the allegedly illegal element, and notes that Mr. Sicher testified that, without the addition of the allegedly illegal element, his "test dummy probably would have suffered head-to-roof contact[.]" *Id.* at 36. Honda seeks reversal of the judgment in favor of Appellees' on its crashworthiness claim on the grounds that "[a] design like Mr. Sicher's, dependent on a feature that is illegal to sell, cannot logically or legally be a feasible alternative design." *Id.*

We conclude that Honda's claim lacks merit. Here, the parties presented conflicting evidence of the legality and practicability of Appellees' alternative design. The jury, as factfinder, was free to believe all, part, or none of the evidence, and to determine which party's witnesses and evidence it found more credible. Having properly done so, the court did not abuse its discretion in denying Honda's Motion for Judgment N.O.V.

**Federal Preemption**

In its fifth issue, Honda claims that Appellees' unlawful design defect claim is preempted by federal motor vehicle safety standards because it

"frustrates a comprehensive federal regulatory scheme intended to ensure that manufacturers have a choice among a variety of designs for passenger restraint systems." Honda's Brief at 38-39. Honda also argues that this claim is preempted because Appellees' alternative design violates federal law. *Id.* at 37.

The trial court explained its denial of Honda's claim as follows:

> In denying Honda's claim we followed the decision of the United States Supreme Court in *Williamson v. Mazda Motor of America, Inc.*, [562 U.S. 323 (2011)], which held that although the federal regulations provided manufacturers with choices between seat belt designs, victims may still raise state court claims of defective design based upon a manufacturer's decision to install an allegedly less safe design.

Trial Ct. Op. at 8.

We agree with the trial court that the U.S. Supreme Court's holding in *Williamson* is clearly applicable to the instant matter and unequivocally permits Appellees' state claim. Moreover, we note that, with the exception of *Williamson*, Honda did not direct this Court to any binding authority in support of the arguments it proffered, instead relying on decisions of the federal circuit and district courts. *See NASDAQ OMX PHLX, Inc. v. PennMont Secs.*, 52 A.3d 296, 303 (Pa. Super. 2012) (reiterating that decisions of the lower federal courts are not binding on this Court). For these reasons, Honda's claim lacks merit.

**Failure to Prove Causation**

In its sixth issue, Honda claims that it is entitled to a new trial or Judgment N.O.V. because "[a]ssuming *arguendo* that Honda had a duty to warn about the open and obvious risk of injury from rollover accidents and did not satisfy it, Appellees failed utterly to prove that any inadequate warning caused Mr. Martinez's injury." Honda's Brief at 48. Honda argues that Appellees failed to offer evidence to support a reasonable inference that an inadequate warning caused Mr. Martinez's injuries. *Id.* at 50. Honda further avers that "[i]f the trial court had not erroneously instructed the jury to presume causation irrebuttably,[6] [ ] the jury could not have made a reasonable, evidence-based judgment that Mr. Martinez's injury was caused by the owner's manual lacking a hypothetical warning of an unspecified nature." *Id.* at 51.[7]

We review this claim with the following in mind:

> Proximate cause is an essential element in a failure to warn case. A proximate, or legal cause, is defined as a substantial contributing factor in bringing about the harm in question. Assuming that a plaintiff has established both duty and a failure to warn, a plaintiff must further establish proximate causation by showing that had

---

[6] This argument is predicated on Honda's claim, disposed of *supra*, that the trial court erroneously instructed the jury with an irrebuttable heeding presumption. *See supra* at 14-16.

[7] Honda also claims, without citation to authority, that Appellees had the burden of proving that the warnings given by Honda were inadequate, and that Appellees failed to sustain that burden. Honda's Brief at 52-53. We find this argument waived.

> defendant issued a proper warning, he would have altered his behavior and the injury would have been avoided. To create a jury question, the evidence introduced must be of sufficient weight to establish . . . some reasonable likelihood that an adequate warning would have prevented the plaintiff from [engaging in the conduct that caused the injury].

*Maya v. Johnson and Johnson*, 97 A.3d 1203, 1213-14 (Pa. Super. 2014) (citation omitted).

Mr. Martinez testified over Honda's objection that he would not have purchased the automobile if there had been warnings about it not being able to protect him in a rollover. Notably, Honda did not cross-examine Mr. Martinez to ascertain whether, for example, he possessed the manual, or had read it. Appellees', therefore, proffered sufficient evidence from which the jury could conclude that Honda's failure to adequately warn Mr. Martinez was the proximate cause of his injury.

**Excessive Damages Claim**

In its seventh issue, Honda claims that the damages awarded by the jury were excessive and illegal. Honda's Brief at 53. First, Honda argues that the award "bears no relation to [Appellees'] actual harm, and far exceeds other awards in similar Pennsylvania cases." *Id.* at 54. Next, Honda argues that the non-economic portion of the award was disproportionate to the economic component, indicating that the award was punitive in nature, and, therefore, violated Honda's due process rights. *Id.*

Honda asks this Court to grant remittitur and reduce the allegedly excessive verdict. *Id.* at 56.

The decision to grant or deny remittitur is within the sound discretion of the trial court; "judicial reduction of a jury award is appropriate only when the award is plainly excessive and exorbitant." *Renna v. Schadt*, 64 A.3d 658, 671 (Pa. Super. 2013). "The question is whether the award of damages falls within the uncertain limits of fair and reasonable compensation or whether the verdict so shocks the sense of justice as to suggest that the jury was influenced by partiality, prejudice, mistake, or corruption." *Id.*

In deciding whether a jury's verdict is excessive, the court should consider, *inter alia*,

> (1) the severity of the injury; (2) whether the plaintiff's injury is manifested by objective physical evidence or whether it is only revealed by the subjective testimony of the plaintiff (and, herein, the court pointed out that where the injury is manifested by broken bones, disfigurement, loss of consciousness, or other objective evidence, the courts have counted this in favor of sustaining a verdict); (3) whether the injury will affect the plaintiff permanently; (4) whether the plaintiff can continue with his or her employment; (5) the size of the plaintiff's out-of-pocket expenses; and (6) the amount plaintiff demanded in the original complaint.

*Gbur v. Golio*, 932 A.2d 203, 212 (Pa. Super. 2007).

Instantly, the trial court considered Honda's request for remittitur, and found the following:

- 22 -

> . . . Mr. Martinez was rendered a paraplegic. The jury credited [Appellees'] evidence that his future care would cost $14,605,393[,] and his lost earnings amounted to the sum of $720,321. The verdict for non-economic damages and loss of consortium was consistent with the facts and testimony presented in court. We did not believe it appropriate for us to disturb the jury's finding. The evidence from the family in this case was compelling how the accident turned Mr. Martinez from a family wage earner and head of the household into a helpless person dependent upon others for every aspect of his daily survival. Every part of both plaintiff[s'] lives were changed drastically and irrevocably. As Mr. Martinez had a life expectancy of an additional twenty-eight (28) years, both plaintiffs will suffer extensive damages. Accordingly, in the exercise of our discretion, based upon the evidence we did not believe the verdict should have been disturbed.

Trial Ct. Op. at 11.

The trial court did not abuse its discretion in concluding that the jury's verdict in this case did not shock its sense of justice, nor in declining to find that partiality, prejudice, mistake, or corruption influenced the jury in its determination of the award. Our review of the record indicates that Appellees' presented ample evidence of Mr. Martinez's injuries and how they impact him and his family now and for the rest of his life. Moreover, the trial court's Opinion on this issue, albeit brief, reflects that it properly weighed the factors set forth in **Gbur**, **supra**. Accordingly, no relief is due on this claim.

J. A21015/16

**Transfer to York County**

In its final issue, Honda claims that any new trial should be conducted in York County. Because we have concluded that Honda is not entitled to a new trial, we need not reach the merits of this issue.

Judgment affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/19/2017